DAVIS YARN Co., INC., et al., Plaintiffs, *v.* BROOKLYN YARN DYE Co., INC., et al., Defendants, and SENTINEL FIRE INSURANCE COMPANY et al., Impleaded Defendants.

First Department, December 11, 1942.

· *John L. Fletcher* of counsel (*George I. Janow,* attorney for plaintiff Greenwelk Knitwear Co., Inc., and impleaded defendant Northern Assurance Company, Ltd.; *Bigham, Englar, Jones & Houston,* attorneys for plaintiff May Knitting Co., Inc.; *John M. Aherne,* attorney for impleaded defendant Switzerland General Insurance Company, Ltd.; *John L. Fletcher,* attorney for all other plaintiffs and all other impleaded defendants.

*Bert Cotton* of counsel for defendant Brooklyn Yarn Dye Co., Inc.; *Norman S. Rein,* attorney for defendant, Commercial Union Assurance Company, Ltd.

UNTERMYER, J. The plaintiffs are engaged in the knitting or knit wear business. The defendant Brooklyn Yarn Dye Co., Inc., is engaged in the business of dyeing, renovating and storing yarns for the knitting and knitwear trade.

On June 21, 1937, a wind storm demolished part of the roof of the plant of the defendant Brooklyn, located at 2201-2227 Neptune avenue, Brooklyn, and destroyed certain piping connected with the roof, including pipes which served the sprinkler system in the premises. A quantity of water from the sprinkler system and rain water caused damage to yarns of the plaintiffs then on the premises.

At the time of the loss each of the plaintiffs held a floater policy issued by the impleaded defendants respectively insuring the merchandise against such a casualty. There was also then in force a policy of insurance issued by the defendant Commercial Union Assurance Company, Ltd., to the defendant Brooklyn covering these yarns while in Brooklyn's plant " and while being transported to and from its customers or warehouses or agencies by trucks of the Assured, public carriers and/or mail service * * *." It was further " understood and agreed that this policy covers the property insured while in the custody of other processors or while placed in storage by the Assured at any premises other than the premises of the Assured awaiting processing " and " while on trucks hired or

leased by the Assured." It is conceded that the policy issued by the defendant Commercial would cover the loss which occurred on June 21, 1937, and would entitle the plaintiffs to recover were it not for a limitation contained in paragraph 4, which under the heading "This Policy Does Not Insure Against" provides as follows: "It is understood and agreed that whenever the Assured and/or Assured's customers has other insurance in force covering any of the property described herein, this policy of insurance is to be considered excess insurance and shall indemnify the Assured and/or Assured's customers in excess of the liability of the other insurance, and for any loss which the Assured and/or Assured's customers may suffer by the operation of any contribution, co-insurance, average, or distribution clauses contained in the policies of other insurance, and further that this contract shall not contribute to the payment of any loss or damage until the liability of said other insurance shall have been exhausted subject to the limits of liability as provided elsewhere herein."

The floater policies issued by the impleaded defendants, it is likewise conceded, covered the loss which occurred on June 21, 1937, but these policies also contain stipulations which, in varying terms, provide that they shall be considered as excess insurance if any other insurance exists in the name of the assured or of others on any property insured thereby. Accordingly, the question now presented is which of these insurers, if any, is liable for the loss which occurred on June 21, 1937. It has been stipulated that if the defendant Commercial is held to be liable the defendant Brooklyn shall be exonerated for the reason that liability is asserted against that defendant only on the theory that it had represented to the plaintiffs that their merchandise was fully insured. In view of our conclusion that the defendant Commercial is liable we do not pause to consider the liability of the defendant Brooklyn.

We think it is evident that notwithstanding the limitation concerning other insurance contained in all the policies either the defendant Commercial or the impleaded defendants are liable to the plaintiffs. It is conceded that if the plaintiffs had been insured by one or the other of these insurers, they would be entitled to recover for their loss. We reject the conclusion that because the loss is covered by two policies the plaintiffs may recover upon neither. Not only would such a rule defy the intentions of the parties and result in great inequity (*Mill Factors Corporation* v. *Ming Toy Dyeing Co.*, 41 F. Supp. 467),

but it would be untenable in principle since the moment that either policy is held to be unenforcible the reason for invalidating the other policy ceases to exist (Richards on Insurance [3d ed.], § 253). These reasons apply with special emphasis in the present case, where the policy of the defendant Commercial provides for a limitation of its liability only if the plaintiffs shall have other insurance then " in force " covering the loss.

We thus approach the question of the liability of the defendant Commercial and of the impleaded defendants for the loss which occurred on June 21, 1937. In considering that question we recognize that neither our recent decision in *Gordon* v. *Franklin Fire Insurance Co.* (262 App. Div. 328) nor the decision in *Fairchild* v. *Liverpool & London Fire & Life Ins. Co.* (51 N. Y. 65) is directly applicable to the present case. Those decisions were concerned with the interpretation of policies which limited the liability of the insurer if the property was " specifically insured " by others. It was held that the " other " policy in the *Gordon* case consisting of a floater policy did not constitute such " specific " insurance and that accordingly the limitation did not apply. In the present case we are concerned with a policy which refers, not to other " specific insurance," but to any other insurance of the property. We must, therefore, consider whether on general principles of law the defendant Commercial or the impleaded defendants whose policies contain similar limitations are liable to the plaintiffs.

We think the defendant Commercial is liable for the loss and that accordingly there should be judgment in favor of the plaintiffs against that defendant to the exclusion of the defendant Brooklyn Yarn Dye Co., Inc., and the impleaded defendants. The policies issued by the impleaded defendants are floater policies insuring the merchandise in the hands of any of the various processors employed by each of the plaintiffs in the conduct of their business or while in transit to and from the premises of all such processors when such processors did not themselves provide insurance on the yarns. The policy of the defendant Commercial was of a different character and, generally speaking, was intended to insure the defendant Brooklyn and its customers against loss only while the yarns were on the premises, under its control or in transit to and from that particular defendant. The relations of the parties and the intention flowing from that relationship persuade us that the policy of the defendant Commercial, in the main more specific in coverage than the floater policies, was thus intended to create a primary liability to which the floater policies issued by the impleaded

defendants were supplementary and secondary, to be effective only if the merchandise was not otherwise fully insured. The distinction between such policies was, we think, stated with accuracy in *Wilson Company* v. *Hartford Fire Insurance Co.,* (300 Mo. 1) as follows: "The texts and cases tell us that a floating policy is one intended to supplement specific insurance on property and attaches only when the latter ceases to cover the risk. (*Cutting* v. *Atlas Mutual Insurance Co.,* 199 Mass. 380; *Peabody* v. *Liverpool, &c. Ins. Co.,* 171 Mass. 114; *Block* v. *American Ins. Co.,* 132 Wisc. 150.) The reason for the creation and the purpose of this character of policy is to provide indemnity for property which cannot because of its frequent change in location and quantity be covered by specific insurance. [*Gross* v. *New York & T. S. S. Co.,* 107 Fed. 516; *Grossbaum Ceramic Art Syndicate* v. *German Ins. Co.,* 213 Pa. 506; *Fairchild* v. *Liverpool & London Fire & Life Ins. Co.,* 51 N. Y. 65; *Klotz Tailoring Co.* v. *Eastern Fire Ins. Co.,* 102 N. Y. Supp. 82.] Floating or surplus insurance is a form of indemnity not infrequently resorted to, especially when the property insured is of such a nature as not to admit of a gross valuation. By its terms it cannot become operative until the prior insurance has been exhausted."

It follows that the plaintiffs are entitled to judgment against the defendant Commercial Union Assurance Company, Ltd., for the amount of their respective losses with interest as stipulated from November 1, 1937, but without costs.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Judgment unanimously directed in favor of the plaintiffs against the defendant, Commercial Union Assurance Company, Ltd., for the amount of their respective losses with interest as stipulated from November 1, 1937, but without costs. Settle order on notice.