DAVIS YARN Co., INC., et al., Respondents, *v.* BROOKLYN YARN DYE Co., INC., Defendant; COMMERCIAL UNION ASSURANCE COMPANY, LTD., Appellant, and SENTINEL FIRE INSURANCE COMPANY et al., Impleaded Defendants-Respondents.

Argued April 13, 1944; decided July 19, 1944.

*Bert Cotton* and *Norman S. Rein* for appellant. I. Commercial Union is not liable to plaintiffs by reason of the existence of the policies of insurance issued to plaintiffs by their own insurers. There is no principle of insurance law which requires that where there is more than one policy the one that is more specific shall bear the loss. II. The policy issued by Commercial Union to Brooklyn is not specific insurance. (*Fairchild et al.* v. *L'pool & L'don F. & L. Ins. Co.*, 51 N. Y. 65; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527.) III. The language and form of the respective policies reveals the actual intention of the parties to place primary liability on plaintiffs insurers whereas Commercial Union agreed to accept only excess liability. (*Fairchild et al.* v. *L'pool & L'don F. & L. Ins. Co.*, 51 N. Y. 65; *Suetterlein* v. *Northern Ins. Co.*, 251 N. Y. 72; *Zurich General Accident & Liability Ins. Co.* v. *Clamor*, 124 F. 2d 717.) IV. If the policy of Commercial Union covers the merchandise of any of the plaintiffs, the latter's insurers likewise cover, and Commercial Union is entitled to contribution from the respective other insurers. (*New Amsterdam Casualty Co.* v. *Hartford Accident and Indemnity Co.*,

18 F. Supp. 707; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527; *Zurich General Accident & Liability Ins. Co.* v. *Clamor*, 124 F. 2d 717; *Morrell* v. *Irving Fire Insurance Co.*, 33 N. Y. 429; *Lucas* v. *Jefferson Insurance Co.*, 6 Cow. 635; *Automobile Ins. Co.* v. *Springfield Dyeing Co.*, 109 F. 2d 533; *Rankin Funeral Home, Inc.*, v. *Rhode Island Ins. Co.*, 247 App. Div. 670, 273 N. Y. 545.) V. The judgment in favor of Brooklyn is final and the Court of Appeals will neither consider plaintiffs' rights against Brooklyn nor will it reverse the judgment in favor of the latter. (*St. John* v. *Andrews Institute*, 192 N. Y. 382; *Wilson* v. *Mechanical Orguinette Co.*, 170 N. Y. 542; *Robertson* v. *Bullions*, 11 N. Y. 243; *Kelsey* v. *Western*, 2 N. Y. 500; *General Fireproofing Co.* v. *Keepsdry Const. Co.*, 173 App. Div. 528; *Nau* v. *Vulcan Rail & Construction Co.*, 286 N. Y. 188; *Martin* v. *Winiarski*, 259 App. Div. 499; *Stanton* v. *Gohler*, 16 Misc. 383.)

*John L. Fletcher, George I. Janow* and *John M. Aherne* for respondents. I. Plaintiffs' merchandise was specifically insured at the premises of Brooklyn against loss by the casualty in question — the policies of insurance which plaintiffs had with the impleaded defendants were excess insurance contracts and did not cover plaintiffs' loss. (*Exton & Co.* v. *Home Fire & Marine Ins. Co.*, 249 N. Y. 258; *Waring* v. *The Indemnity Fire Ins. Co.*, 45 N. Y. 606; *Wilson & Co., Inc.*, v. *Hartford Fire Ins. Co.*, 190 App. Div. 506, 229 N. Y. 612; *Fairchild et al.* v. *L'pool & L'don F. & L. Ins. Co.*, 51 N. Y. 65; *Southern Cotton Oil Co.* v. *Merchants' & M. T. Co.*, 179 F. 133; *Mill Factors Corporation* v. *Ming Toy Dyeing Co.*, 41 F. Supp. 467; *Wilson* v. *Hartford Fire Insurance Co.*, 300 Mo. 1; *Klotz Tailoring Co.* v. *Eastern Fire Insurance Co.*, 116 App. Div. 723; *Lowell Manuf. Co.* v. *Safeguard F. Ins. Co.*, 88 N. Y. 591; *Gordon* v. *Franklin Fire Insurance Co.*, 262 App. Div. 328; *United Underwriters Ins. Co.* v. *Powell & Co.*, 94 Ga. 359; *Merrill* v. *Agricultural Ins. Co.*, 73 N. Y. 452; *Kalle & Co.* v. *Morton*, 156 App. Div. 522, 216 N. Y. 655.) II. The case of *North British & Mercantile Insurance Co.* v. *London, Liverpool & Globe Insurance Co.*, 5 Chancery Div. 569 (1877) is precisely in point with the case at bar. III. Commercial Union is not in a position to claim that its policy constitutes other insurance because its

policy first attached, and if there is a conflict in coverage between the policy of Commercial Union and the policies of the impleaded defendants the Commercial Union policy is the valid insurance. (*Automobile Ins. Co.* v. *Springfield Dyeing Co.*, 109 F. 2d 533; *Lackey* v. *Georgia Home Ins. Co.*, 42 Ga. 456; *Thomas* v. *Builders Mutual Fire Ins. Co.*, 119 Mass. 121; *Sweeting* v. *Mutual Fire Ins. Co.*, 83 Md. 63.) IV. Plaintiffs are entitled to enforce all the rights of the bailee Brooklyn against the Commercial Union. (*Waring* v. *The Indemnity Fire Ins. Co.*, 45 N. Y. 606; *Hagan* v. *Scottish Ins. Co.*, 186 U. S. 423; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 527; *Symmers* v. *Carroll*, 207 N. Y. 632; *Lewis* v. *Home Insurance Co.*, 199 App. Div. 556; *Munich Assur. Co.* v. *Dodwell & Co.*, 128 F. 410.) V. Contribution is never enforced between specific insurance and floating insurance for the reason that such policies cover different interests. (*Indemnity Insurance Co.* v. *American Surety Co.*, 239 App. Div. 522; *Matter of General Indemnity Corp. of America*, 159 Misc. 892; *Exchange M. I. Ins. Co.* v. *Zurich*, 122 Misc. 386, 214 App. Div. 713; *Fairchild et al.* v. *L'pool & L'don F. & L. Ins. Co.*, 51 N. Y. 65; *Wilson & Co.* v. *Hartford Fire Ins. Co.*, 190 App. Div. 506, 229 N. Y. 612; *Lowell Manuf. Co.* v. *Safeguard F. Ins. Co.*, 88 N. Y. 591; *Automobile Ins. Co.* v. *Springfield Dyeing Co.*, 109 F. 2d 533; *Gordon* v. *Franklin Fire Insurance Co.*, 262 App. Div. 328; *United Underwriters* v. *Powell*, 94 Ga. 359.) VI. In the event that the Court of Appeals reverses the judgment below, then the plaintiffs are entitled to have their rights against Brooklyn adjudicated on the merits, and if necessary the whole case should be remanded to the Appellate Division for such adjudication. (*Dudley* v. *Perkins*, 235 N. Y. 448; *Sun Printing & Publishing Assn.* v. *Moore*, 183 U. S. 642; *Fairmont Coal Co.* v. *Jones & Adams Co.*, 134 F. 711; *Siegel* v. *Spear & Co.*, 234 N. Y. 479; *Barile* v. *Wright*, 256 N. Y. 1; *Altman* v. *Hofeller*, 152 N. Y. 498.)

CONWAY, J. The question presented here arises by reason of the fact that a number of inland marine "floater" policies covered the same goods and insured against the peril which occurred, and we must determine whether one of the policies must bear the entire burden, whether there shall be contribution

between it and another or others or whether all of the policies, being of the same category, must contribute to the payment for the loss incurred.

The defendant, Brooklyn Yarn Dye Co., Inc. (hereinafter referred to as Brooklyn), was engaged in the business of dyeing yarns. The fifteen plaintiffs, who were engaged in the knitwear business, forwarded, from time to time, yarns owned by them to Brooklyn Yarn Dye Co., Inc. so that they might be dyed. On June 21, 1937, Brooklyn had on its premises yarns of the plaintiffs. On that day the yarns were damaged by water as a result of a wind and lightning storm, which tore off part of the roof of the plant and disrupted piping connected therewith. The water which caused the damage was water from the sprinkler system and rain.

On June 1, 1936, Brooklyn had obtained from the Commercial Union Assurance Company, Ltd. (hereinafter called Commercial), a bailee customer's policy of insurance on customers' goods. Brooklyn advised each of the plaintiffs of the receipt of that policy prior to the delivery to Brooklyn of the merchandise involved herein. Further, Brooklyn inserted an advertisement in a trade publication that: " When you send your yarn to Brooklyn, it is fully protected against all possible mishaps * * * and completely insured * * *."

The policy written by Commercial was an inland marine policy covering yarns accepted for dyeing, while contained in the premises of the assured situated at 2201 Neptune Avenue, Brooklyn, while being transported to and from its customers or warehouses or agencies, while temporarily held in storage during transportation and while on trucks hired or leased by the assured. The policy provided " It is understood and agreed that whenever the Assured and/or *Assured's customers has other insurance in force* covering any of the property described herein, this policy of insurance is to be considered excess insurance and shall indemnify the Assured and/or Assured's customers in excess of the liability of the other insurance, and for any loss which the Assured and/or Assured's customers may suffer by the operation of any contribution, coinsurance, average, or distribution clauses contained in the policies of other insurance, and further that this contract shall not contribute to the payment of any loss or damage until the liability of said other insur-

ance shall have been exhausted subject to the limits of liability as provided elsewhere herein.''

The policy also provided: '' OTHER INSURANCE. (10) This Company shall not be liable hereunder for loss or damage to any of the property described herein which at the time of such loss is the subject of any fire, marine, inland or any other insurance whatsoever which would cover such property insured hereunder were this policy not in existence, whether such insurance be prior, concurrent or subsequent hereto in date, or be issued to or held by any party or parties having an insurable interest therein until the amount of such other insurance is exhausted, and then only to the extent that such loss or damage may exceed the amount of such other insurance, whether valid or invalid or by solvent or insolvent Insurers; if at the time of such loss the Assured shall have any other insurance *identical* with or *similar* to the terms of this policy, whether prior, concurrent or subsequent hereto in date, then this Company shall not be liable hereunder for a greater proportion of any loss or damage to the property insured hereunder than the amount hereby insured bears to the whole insurance effected, whether valid or not or by solvent or insolvent Insurers.'' (Italics supplied.)

Immediately after the loss, notice of the occurrence was given by Brooklyn to Commercial. Commercial sent its adjuster to the premises in Brooklyn to examine the yarns which were thereafter removed to Underwriters Salvage Company. They were there salvaged and sold pursuant to an agreement entered into by Commercial, the plaintiffs, and the impleaded defendants. Brooklyn retained a firm of independent adjusters which thereafter filed proof of loss on behalf of all plaintiffs, except three. Prior to the filing of those proofs of loss, Commercial had denied liability to Brooklyn and to each of the plaintiffs on the ground that the damage to plaintiffs' yarns was not covered by the terms of the Commercial policy because of the existence of the policies of the impleaded defendants. By the submission Commercial admitted '' that due demand for payment was made by plaintiffs and refused by defendant Commercial '' and that the defendant Commercial did not '' contend that there was no adoption of its policy by plaintiffs subsequent to the occurrence of the loss to plaintiffs' merchandise.''

Each of the plaintiffs, excepting three, filed claims with its respective insuring company and all but one received from such companies a sum of money equal to the amount each sued for herein and delivered a loan receipt therefor. The present action is being prosecuted by counsel designated and selected by the impleaded defendants and another. Paragraph 38 of the Submission is as follows: " It is conceded by defendant Commercial Union that it would pay the plaintiffs for the losses sustained by plaintiffs by said casualty were it not for the existence of Exhibits 21 to 33 inclusive, [policies issued by the impleaded defendants] and it is conceded by the impleaded defendants that they would pay the respective plaintiffs to whom their respective policies were issued for the losses sustained by plaintiffs by said casualty were it not for the existence of Exhibit 3 [the policy issued by Commercial].''

On those facts we have this submission, *the litigation really being among insurance companies.* The issue presented, therefore, is whether the defendant Commercial or the impleaded defendants should bear the loss or whether there should be contribution among them.

Now to go back for a moment. Each of the plaintiffs had a policy in one of the impleaded defendants' companies. For the sake of brevity we shall use but a word or two of the full names of the plaintiffs and the impleaded defendant companies. The policy of Sentinel issued to Bellmore Neckwear covered yarns of the assured while in transit to the premises of Brooklyn, " 2201 Neptune Avenue, Brooklyn, New York, *while there* and thence return to assureds' premises. While at premises of the Brooklyn Yarn Dye Co., Inc., 2201 Neptune Avenue, Brooklyn, New York, this policy covers against direct loss or damage caused by Fire * * * Windstorm, Water Damage * * *.'' The policy provided:

" If at the happening of any casualty the Assured has any other insurance identical with or similar to the terms of this Policy, whether prior or subsequent in date, or simultaneous with this insurance, then this Company shall not be liable under this Policy for a greater proportion of any loss on the property insured hereunder than the amount hereby insured shall bear to the whole insurance effected, whether valid or not.

" And it is agreed that if, at the happening of any casualty, the Assured have any other insurance by Policy, contract or otherwise, covering within the limits of this Policy, then such other insurance shall contribute with this insurance pro rata as to their respective amounts."

As we shall see, since that policy mentioned and described the premises of Brooklyn, it was just as " specific " as the Commercial policy.

The Insurance Company of the State of Pennsylvania issued a policy to Grand Knitting covering property in premises other than that occupied by the assured and while in transit within the United States or Canada. That policy provided: " This insurance to be considered contributing or excess insurance at assured's option. This company to pay any loss due to hazards insured herein not collectible under other insurance carried by the assured." Since assured filed proofs of loss against Commercial and the Insurance Company of the State of Pennsylvania, it elected to have the insurance contributing.

The Insurance Company of North America issued a policy to Mayfair on goods while located on the premises of dyers and while in transit. It contained the following clause, the last sentence in which is quite relevant.

" 2–3. Other insurance permitted without notice until required and it is hereby declared and agreed that whenever any of the foregoing described property at the time of any loss, is covered by specific insurance, this policy shall not extend to cover the same, excepting only as far as relates to any excess of value beyond the amount collectible from such specific insurance, and shall not be liable for any loss unless the amount of such loss shall exceed the amount collectible from such specific insurance, which said excess only is declared to be under the protection of this policy. *Where there is other floating insurance,* valid or not valid, on the same property, this policy shall be liable for no greater proportion than the sum hereby insured in one casualty bears to the total floating insurance." (Emphasis supplied.)

That paragraph differentiates quite properly between " specific insurance " and "floating insurance " and since, as we shall see, all of the policies involved herein are floating insurance, the policy of Insurance Company of North America must contribute to the loss, under the rule to be pointed out later.

The American Insurance Company issued a policy to Regal covering merchandise while being shipped in the United States and Canada and while in the custody or on the premises of dyers. It contained the following clause:

" CONDITIONS

" Other Insurance

" (1) Other insurance permitted without notice until required but it is expressly understood and agreed that this insurance *shall not cover to the extent of any other insurance,* by whomsoever effected, directly or indirectly covering the goods and merchandise in respect of which this insurance covers, whether such other insurance be prior, concurrent or subsequent hereto in date; and this Company shall be liable, in respect of such goods and merchandise, only for its proportion of any direct loss and damage, by the risks and perils hereby insured against, *in excess* of the amount payable by or recoverable from such other insurers, whether such other insurers be solvent or otherwise."

It also provided under " CONDITIONS ": " This insurance shall not inure to the benefit of any Carrier or Bailee whatsoever."

There was a further provision in the policy under paragraph 11 reading as follows: " It is understood and agreed that non-payment by the dyer or non-payment under insurance policies provided by dyers within sixty (60) days after the occurrence of any loss covered by this endorsement shall constitute a claim hereunder."

Continental issued a policy to Knickerbocker covering merchandise anywhere within the United States, Canada or New-foundland, in transit and while on the premises of any dyeing plant in the United States or Canada. That policy contained these clauses:

" 9. Other insurance permitted without notice.

" 10. It is understood and agreed that it is the intention of this policy to indemnify the assured, subject to the terms and conditions of this policy, for all losses covered hereunder, irrespective of any other insurance on the same property. In the event of the existence of such other insurance, the assured agrees to remit to this company all sums recovered by the assured

from such other insurance to the extent of the loss paid by this Company.

* * * * * * *

" It is understood and agreed that if there be any other insurance on property covered above, whether issued in the name of the assured or of others, then such other insurance shall first apply and this insurance shall not be considered as contributing with such other insurance * * *."

That policy contained also the following conditions: " (1) Other insurance permitted without notice until required but it is expressly understood and agreed that this insurance *shall not cover* to the extent of any other insurance, by whomsoever effected, directly or indirectly covering the goods and merchandise in respect of which this insurance covers, whether such other insurance be prior, concurrent or subsequent hereto in date; and this Company shall be liable, on such goods and merchandise, only if its proportion of any direct loss and damage, by the risks and perils hereby insured against, *in excess of the amount* payable by or recoverable from such other insurers, whether such other insurers be solvent or otherwise."

The Insurance Company of the State of Pennsylvania also issued a policy to Knittown Togs covering merchandise while in transit in the United States and Canada and while on the premises of dyers in the United States and Canada. The policy contained the following clause: " It is understood and agreed that this insurance shall be considered as excess insurance where any other insurance exists in the name of the assured or others on any property hereby insured, and this insurance shall not apply or contribute to the payment of any loss until the amount due from all such other insurance shall have been exhausted * * *."

Another policy was issued by the same insurance company to Fleetwood Sportwear containing a clause similar to that in the last mentioned policy.

Still another policy was issued by the same company to Interstate Knitting covering merchandise while in transit and while on the premises of contractors for processing. That policy contained the following clauses:

" This policy does not cover any loss or damage that would have been covered under any other form of insurance had this policy not been issued.

" It is understood and agreed that this insurance shall be considered as excess insurance where any other insurance exists in the name of the assured or others on any property hereby insured, and this insurance shall not apply or contribute to the payment of any loss until the amount due from all such other insurance shall have been exhausted.  *  *  *."

The American Union issued a policy to Sussman Yarn covering goods while in the custody of others for renovating, bleaching and dyeing and while in transit. The policy contained the following clauses:

" Where the insured may have benefit of other insurance, either direct or otherwise it is agreed that this policy shall be considered as excess insurance.  *  *  *

 *  *  *  *  *  *  *

" It is expressly agreed that this insurance shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance."

Springfield Fire issued a policy to Davis Yarn covering all kinds of goods, consisting principally of yarns, the property of assured or held in trust or on commission while in the custody or premises of dyers or while being transported on vehicles. It provided:

" If at the happening of any casualty the *Assured* has any other insurance identical with or similar to the terms of this Policy, whether prior or subsequent in date, or simultaneous with this insurance, then this Company shall not be liable under this Policy for a greater proportion of any loss on the property insured hereunder than the amount hereby insured shall bear to the whole insurance effected, whether valid or not.

" And it is agreed that if, at the happening of any casualty, the *Assured* have any other insurance by Policy, contract or otherwise, covering within the limits of this Policy, then such

other insurance shall contribute with this insurance pro rata as to their respective amounts.

\* \* \* \* \* \* \*

" CARRIERS

" This insurance warranted to be in all cases null and void to the extent of any insurance by any carrier or *bailee* which would attach and cover said property if this Policy had not been issued, \* \* \* and it is also understood and agreed, that in case any agreement be made or accepted by the Assured with any carrier or *bailee* by which it is stipulated that such or any carrier or *bailee* shall have, in case of any loss for which he may be liable, the benefit of this insurance, or exemption in any manner from responsibility grounded in the fact of this insurance, then and in that event this Company *shall be discharged of any liability* for such loss thereunder, but this Policy in these and all cases of loss or damage by perils insured against shall be liable and owe actual payment for (only) what cannot be collected from carrier and/or bailees and/or insurers of property lost or damaged, \* \* \* but in case of final failure to collect from the carrier and/or bailees and/or insurers, a portion of the sum advanced by this Company equal to the sum short collected from the carrier, and/or bailees and/or insurers, may be retained and applied in settlement of the actual liability of this insurance \* \* \*."

Northern Assurance issued a policy to Greenwelk Knitwear covering merchandise while detained during processing on premises of contractors in the United States and while in transit. It also contained clauses similar to those already quoted.

So also the Switzerland General, which issued a policy to May Knitting covering merchandise while temporarily detained during processing on premises of contractors, while in the United States and while in transit within the United States and Canada and covering certain named premises not including those of Brooklyn.

In order to understand the situation presented it is necessary to recall some fundamentals. We are concerned here with marine insurance. All insurance in this State whether fire, marine or of any other form is that which the authoritative cases in this State and our Legislature define it to be. Sometimes

that which is included by the Legislature within the writing powers of a marine company is purely arbitrary and has nothing to do with what would popularly be thought to be either ocean marine or inland marine risks. When it became necessary to cover risks to property while in transit on land those risks were confided to marine companies because it was marine companies as distinguished from fire or life or casualty or surety companies which had theretofore had to do with the carrying of goods and it was natural to enable and permit them to insure goods in transit on land. Hence we have the extensive inland marine business which in large part has nothing to do with carrying by water. It might better be called, as in some phases it now is called, transportation insurance. Marine insurance in this State under former Insurance Law, section 150, subdivision 1, paragraph (a) now Insurance Law, section 46, subdivision 20, paragraph (a) includes, by legislative provision, "all personal property floater risks". All of the policies involved herein were written under Insurance Law, section 150, prior to its amendment. They were written under authority granted to Commercial and to the impleaded companies as companies with fire and marine powers and had to be written by the companies which are parties herein, under that authority. On June 2, 1933, the National Convention (now Association) of Insurance Commissioners adopted a "nation-wide Definition and Interpretation of the Insuring Powers of Marine and Transportation Underwriters." That definition was accepted by the Superintendent of Insurance of the State of New York by a ruling which officially declared the nation-wide definition to constitute a proper interpretation of the provisions of former section 150 of the Insurance Law which have been carried word for word into the new statute (§ 46, subd. 20, ¶ a), insofar as applicable here. That definition includes under "personal property floater risks" the following:

"(p) Property in transit to and/or from and while waiting for or undergoing processing in bleacheries or fumigatories or on premises of dyesters, throwsters and other similar processors until delivered to storage warehouses or final place of delivery contemplated at the time the shipment was made. Provided, however, that such policies shall not cover bailee's property at his premises.

* * * * * * *

" (r) Bailee's Customers Policies covering personal property of customers. Such policies shall cover in transit and during process at e. g. laundrymen's, dyers' and cleaners' premises, provided, however, that such policies shall not cover bailee's property at his premises."

The policies of the impleaded defendants are of the type defined in subdivision (p) and the policy of Commercial is of the type defined in subdivision (r). None of the policies is specific insurance (as opposed to floating insurance). (See *Fairchild* case, *infra*.) Each of them could have had an address of a building or premises in it or for that matter, several of them. The Commercial policy, the indorsement on it covering the property of bailor National Spinning Co., and contingently covering other bailors, and the policy of one of the impleaded defendants Sentinel Fire Insurance Co., did contain an address. The use of an address did not affect the "floater" status of any of the policies.

An examination of the Commercial policy indicates that it was to cover the risk but was to be regarded as excess insurance if the assured and/or its customers had other insurance in force. The Springfield policy also covered the risk but was to share pro rata if the assured had any other insurance, as it did by acceptance. Other policies of impleaded defendants from which clauses have been quoted were to be regarded as excess insurance if there was other insurance in force. Policies of other impleaded defendants had still other varying provisions. Taking the Commercial policy and those of the impleaded defendants by and large, a literal reading would mean that neither the Commercial policy nor those of the impleaded defendants would apply at all since the assured and/or its customers had other insurance in force sufficient to cover the risk. The Appellate Division correctly rejected a conclusion that because each loss involved herein was covered by two policies, the respective insureds could recover upon neither, pointing out that such a result " would be untenable in principle since the moment that either policy is (was) held to be unenforcible the reason for invalidating the other policy ceases to exist (Richards on Insurance, 3rd ed. § 253)." (265 App. Div. 180, 183.) The Appellate Division, however, was of the opinion that there was a difference in character between the Commercial

policy and those of the impleaded defendants and that, therefore, the cases of *Fairchild et al.* v. *L'pool & L'don F. & L. Ins. Co.* (1872) (51 N. Y. 65) and *Gordon* v. *Franklin Fire Insurance Co.* (262 App. Div. 328), could be used analogously and thus reached the conclusion that the Commercial policy was " *more specific* " and therefore must sustain the entire burden of the losses of the plaintiffs. We have already pointed out that there is no difference in character among the policies here considered. All are in the same category. They are inland marine floater policies.

The *Fairchild* case was decided before we had a New York standard form of fire policy and while the policies issued to plaintiffs in that case are not contained in the record they were forty-six in number and were policies upon merchandise and in one instance furniture in the store at 146 Duane Street, New York City. A list of the insuring companies will be found in the record and the plaintiffs' policies were evidently straight fire insurance policies upon the contents of a specified and described building. The defendant's policy in the *Fairchild* case (p. 69) was concededly a floater inland marine one. This court distinguished between specific insurance and floating insurance in the following language : " This is what is called a floating policy, intended to cover property or value which cannot well be covered by specific insurance from the circumstance that it is changing in quantity or location. The ordinary purpose of such a policy is to *supplement specific insurances and to cover values not covered by them.* Here the plaintiffs' property would sometimes be in one warehouse and sometimes in another, and sometimes on wharves or *in transitu* over the streets, and sometimes above the specific insurances and sometimes under them in value. Hence, the necessity for this floating policy to attach to the property wherever it might be, and in all cases when it happened to exceed the specific insurances."

We held that there was thus a specific insurance policy and a floater policy; that defendant's policy was not to apply if there was any insurance on goods in a specified building (which there was) except for the excess; that there was no excess since the specific insurances far exceeded in amount the value of the goods destroyed; that therefore defendant was not liable.

In the light of the fact that all the policies here are floater

policies, the case of *Fairchild* v. *L'pool & L'don F. & L. Ins. Co.* (51 N. Y. 65) is important since it stated the law of this State. Judge EARL pointed out that floater policies were created or came into being to cover property which could not well be covered under specific insurance because it was changing in quantity or location. Floater policies were defined as supplements to specific insurances — to cover values not covered by them. Specific insurance and floater insurance were thus defined as mutually exclusive. Since none of the policies here is specific insurance (as opposed to floater insurance), the rule of the Appellate Division fastens the liability on the company whose policy is " more specific " in the sense that it is more precisely formulated or restricted. That leads to a question of fact as to which policy is " more specific " and thus leads to further litigation which may well turn on the words used by an insurance underwriter or agent or even a clerk or typist in preparing a floater policy of insurance.

In *Klotz Tailoring Co.* v. *Eastern Fire Insurance Co.* (116 App. Div. 723) there were two policies, one a fire insurance policy in the New York standard form and another a floating policy providing that it did not cover merchandise on which there might be at any time specific insurance except on the excess value over and above the specific insurance. Following the *Fairchild* case, it was there properly held that the specific policy, the standard fire policy, was the one to respond.

In the *Gordon* case (*supra,* p. 329) plaintiffs were the owners of materials which were sent to a firm of contractors to be made into finished garments. The contractors had a New York standard form of fire insurance policy providing that it did not " cover property which is otherwise specifically insured." Plaintiffs had an inland marine floater policy on their property while in possession of contractors. That policy provided that it should be considered as excess insurance when any other insurance existed in the name of the assured or others on the property. The standard fire insurance policy obtained by the contractors was required to bear the loss since it insured the goods at the address of the contractor and the plaintiffs' policy did not insure any particular items nor specify any particular place where the merchandise was to be located. Thus the plaintiffs' goods were not " otherwise specifically insured " under the floater policy.

There are no specific insurance policies here, within the meaning of the *Fairchild* case, but only floater policies. The policies are all of the same class. Each of them could have had an address of a building or premises in it. At least one policy of an impleaded defendant did, e. g. Sentinel Fire Insurance Co. The policy of the Commercial had an address in it when it was insuring the bailee, Brooklyn, and also when it was insuring the bailor, National Spinning Company. All of the floater policies could have had addresses without affecting their floater status. The better rule it seems to us, would be to have all the companies writing floater policies which are all attempted excess policies without a primary one, covering a peril which occurs, compelled to contribute. That will lead to prompt payment for the loss and the elimination of litigation. Under the rule formulated by the learned Appellate Division, if a definite address, at which the peril insured against occurred, was written into three or four floater policies (and in this case there is such definite address in two policies) there would be contribution among those who wrote in that definite address. That instances a further hazard, as far as the insured is concerned, as to which company or companies he shall look to for payment — and a hazard, as we have pointed out *supra,* which is controlled in large part by the unpredictable acts of insurance underwriters, agents, clerks or typists. In addition there is no way for a dyer to learn what insurance there is upon goods sent to it for dyeing except by inquiry made personally or through a broker to those sending goods to be dyed. The head of a business concern soliciting goods for dyeing might well hesitate to make such inquiry into his customers' business. An attempt was made in the instant case by some of the plaintiffs-owners to obtain a " Memorandum of Insurance " from Commercial and they did obtain it but it recited that it was given as a matter of information and conferred no right on the holders and that the policy was subject to alteration without notice. The rule would lead to other curious results. If no one of the writing companies had put in an address at which the peril insured against occurred, all would have been compelled to contribute. If each and every one of the companies had put in such an address, all would have had to contribute. If, as in

this instance, two put such address in, then the other companies would be carried upon the insurance liability of those two companies and such other companies would be collecting premiums for insurance on which they had nothing at risk, assuming, of course, that the two companies which had put the addresses in their policies were solvent and that their policies were adequate to cover the entire loss.

The question of what is " specific insurance " is one upon which there has been much difference of opinion among the courts. Insurance may be specific because it insures against a specific peril. It may insure in a specific amount as distinguished from monthly reporting insurance. Thus in *Federal I. Credit Bank* v. *Globe & Rutgers F. Ins. Co.* (7 F. Supp. 56, 58) it was said: " The expression ' specific insurance ' as here used, means insurance in a *specified* amount in the policy as contrasted with monthly reporting insurance which connotes, as to the amount of insurance, a fluctuating amount dependent upon the value from time to time of the tobacco insured at the particular location. The term ' specific ' as applied in insurance phraseology is frequently used *in contrast with blanket insurance*, the former denoting coverage of a particular piece of property or property at a specific location, as contrasted with the latter which covers the same and other property in several different locations." It may insure property at a specific location as distinguished from property insured wherever it may be. Whatever may be the rule in some other jurisdictions, in this State we have taken the position in the *Fairchild* and succeeding cases that specific insurance and floating insurance are mutually exclusive. We have pointed out the position taken here in the quotation from the *Fairchild* case (*supra*). To the same effect is the following language from *Wilson Company* v. *Hartford Fire Insurance Co.* (300 Mo. 1, 50–52) : " Not only therefore by the express agreement of the parties but in contemplation of law the Globe & Rutgers may be designated as a floating policy. The texts and cases tell us that a floating policy is one intended to supplement specific insurance on property, and attaches only when the latter *ceases* to cover the risk. *Cutting* v. *Atlas Mut. Ins. Co.*, 199 Mass. 380; *Peabody* v. *Liverpool Ins. Co.*, 171 Mass. 114; *Bloch* v. *Am. Ins. Co.*, 132 Wis. 150. The reason for the creation and the purpose of this character of policy is to

provide indemnity for property which *cannot* because of its frequent change in location and quantity be covered by specific insurance. *Gross* v. *New York Co.*, 107 Fed. 516; *Grossbaum Syndicate* v. *German Ins. Co.*, 213 Pa. 506; *Fairchild* v. *Liverpool Ins. Co.*, 51 N. Y. 65; *Klotz Tailor Co.* v. *Eastern Ins. Co.* [116 App. Div. 723], 102 N. Y. Supp. 82.'' (Emphasis supplied.)

There remains to be considered a claim of plaintiffs that they are entitled to have their rights against Brooklyn adjudicated herein. They contend that Brooklyn represented to the trade that the property of its customers would be completely insured; that Brooklyn did not secure complete insurance and is therefore liable to plaintiffs. That point, however, is not before this court. The judgment in the instant case was in favor of Brooklyn and against plaintiffs. Plaintiffs served a notice of appeal from that portion of the judgment. That appeal was dismissed, however, on motion of Brooklyn on the ground that plaintiffs had failed to obtain leave to appeal from the Appellate Division or from this court and on the ground that the notice of appeal was not timely. (*Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.*, 290 N. Y. 859.)

The judgment should be reversed, with costs, and the submission remitted to the Appellate Division for action thereon in accordance with this opinion.

LEHMAN, Ch. J., LOUGHRAN, LEWIS, DESMOND and THACHER, JJ., concur; RIPPEY, J., taking no part.

Judgment accordingly.