STARLIGHT FABRICS, INC., Respondent, *v.* GLENS FALLS INSURANCE COMPANY, Appellant.

Argued March 15, 1948; decided May 21, 1948.

*Gregory S. Rivkins* and *William R. Vincent* for appellant. I. At the time the theft occurred the goods had not been shipped from the premises of the plaintiff. (*Mora y Ledon* v. *Havemeyer,* 121 N. Y. 179; *London Produce Co.,* v. *Poels & Brewster, Inc.,* 216 App. Div. 424; *Krauter* v. *Menchacatorre,* 202 App. Div. 200; *Goldenberg* v. *Cutler,* 189 App. Div. 489; *Harrison* v. *Fortlage,* 161 U. S. 57; *Macondray & Co.* v. *Grace & Co.,* 30 F. 2d 647; *Chicago R. I. & P. Ry. Co.* v. *Petroleum Refining Co.,* 39 F. 2d 629; *San Francisco Iron & Metal Co.* v. *Sweet Steel Co.,* 23 F. 2d 783.) II. The goods were not in due course of transit in the custody of a messenger when the theft occurred. (*Rummell* v. *Blanchard,* 216 N. Y. 348; *San-Nap-Pak Mfg. Co.* v. *Firemen's Ins. Co.,* 47 N. Y. S. 2d 542, 268 App. Div. 905; *Glenmore Silk Corp.* v. *Fidelity & Guar. Fire Corp.,* 151 Misc. 734.)

*Charles T. Weintraub* and *Morris Fish* for respondent. I. The goods were in the custody of a messenger when the theft occurred. (*Mora y Ledon* v. *Havemeyer,* 121 N. Y. 179.) II. The goods were in transit in the custody of the messenger when the loss occurred. (*Rummell* v. *Blanchard,* 216 N. Y. 348; *San-Nap-Pak Mfg. Co.* v. *Firemen's Ins. Co.,* 47 N. Y. S. 2d 542, 268 App. Div. 905; *Underwood* v. *Globe Ind. Co.,* 217 App. Div. 63; *Hanson* v. *National Sur. Co.,* 257 N. Y. 216.)

CONWAY, J. This action was brought by the assured against the insurer on an inland marine policy (see *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.,* 293 N. Y. 236, 247) to recover for loss of goods by theft while in transit. The case was submitted on an agreed statement of facts.

It appears that on March 30, 1943, plaintiff had five cartons and one package of merchandise, concededly of a value of $1,769.40, to be shipped to a buyer in Boston, Mass. The purchaser had stipulated that the goods might be moved from New York to Boston " either via A. Towle Company or Highway Express, both companies named being engaged in the trucking

business between New York and Boston.'' The agreed statement of facts recites that if Leo Fluhr and Sidney Blasberg, both employees of plaintiff, were called they would testify in accordance with submitted written statements.

The substance of Fluhr's statement is that on March 30, 1943, plaintiff called the Towle Trucking Company to have the goods picked up. It failed to do so, and on the following day, March 31st, plaintiff called the trucking company again and was told that a man would be there shortly to pick up the merchandise. Fluhr then stated: '' About 11:00 o'clock that morning, a fellow came in and said, ' Have you got anything for Towles.' We assumed without a question that this was Towles truckman, and I instructed Sidney [Blasberg], who had just come back from a delivery, to take this shipment down to their truck, which he did.'' After a short period Blasberg came upstairs and said that the truckman told him there were more goods for him. Fluhr told Blasberg that there were no other goods for the truckman; that he should not have left the goods without a receipt and to go downstairs to get one. Fluhr himself went down to the street by a passenger elevator and saw Blasberg looking for the truck and truckman. After determining that the Towle Company had not picked up the merchandise, Fluhr called the police.

Blasberg's statement is to the effect that on the day in question Fluhr asked him to take the shipment downstairs to a truckman supposedly from the Towle Company. He stated: '' After I brought the goods down, and helped to load them on a truck, the license number of which was New York commercial 422–528, the truckman sent me upstairs again for some more goods.'' He was told by Fluhr that there were no more goods, and he immediately ran downstairs. He asked the truckman for a receipt, and the truckman suggested that they go into the freight entrance where he proceeded to write a receipt on a plain piece of paper. Blasberg refused to accept it and the truckman suggested that they go outside where he could ask another truckman for a receipt form. When outside the truckman went behind another truck '' and slipped away '' from Blasberg and at '' the same time, the truck on which the goods were loaded, also disappeared ''.

The goods were not received by the Towle Company or recovered by plaintiff, and the imposter-truckman was never apprehended.

The basic insuring provision of the policy is found in " Transportation Rider ' B ' " which provides in part:

" (RAILROAD, RAILROAD EXPRESS AND STEAMER SHIPMENTS) Including Theft, Pilferage and/or Non-delivery.

" The risk under this insurance to attach from the time the goods and/or merchandise leave the store, warehouse or factory at initial point of shipment and continue thereafter *while the said goods and/or merchandise are in due course of transit* and at the risk of the Assured in the custody of:—

" (a) Any Railroad or Railroad Express Company * * *

" (b) The Regular Lines of Steamers * * *.

" (c) Public Truckmen, Private Truckman (including trucks owned and/or operated by and/or for the Assured, and/or Land Transfer and/or Transportation Companies * * *).

until same are delivered at the store, warehouse or factory at destination; including risk while in and/or on docks, wharves, piers, bulkheads, depots, stations and/or platforms, but only *while actually in transit in the custody of the Carriers above provided* and at the risk of the Assured." (Emphasis supplied.)

The policy also contains the following indorsement:

" ENDORSEMENT.
* * *
                                            January 17th 1943

It is understood and agreed that this insurance, *subject to the terms and conditions of the policy,* is extended to cover the within described goods and/or merchandise —

" (a) * * *.

" (b) While in the custody of messengers or in taxicabs, private passengers cars and/or handcarts to an amount not exceeding One Thousand & 00/100 ($1,000.00) Dollars, it is, however, expressly understood and agreed that this coverage is subject to and shall not be deemed additional to the limit of liability in any one casualty.

" (c) While on elevators, landing sheds, depots, station platforms, sidings, sidewalks, yards or elsewhere incidental to loading, unloading and/or removal.

" and this insurance shall cover accordingly.

" *All other terms and conditions remaining unchanged.*"
(Emphasis supplied.)

In the trial court plaintiff sought alternative relief under each of the above provisions of the policy. It claimed that the goods were stolen while in transit either (1) in the custody of a public or private truckman within the coverage of Transporation Rider B (*supra*) in which event it would be entitled to the full amount of its loss, $1,769.40; or (2) in the custody of a " messenger " within the coverage of the messenger indorsement (*supra*), in which event it would be entitled to $1,000, the limit of liability under the indorsement.

The Trial Justice rejected both grounds for relief holding that in any event the policy required the goods to be "in due course of transit " at the time of the theft and that transit had never commenced. Plaintiff has abandoned its claim under the first of its two theories of liability and now relies only upon the second, viz., that at the time of the theft the goods were in the custody of a messenger within the meaning of the indorsement and that it should have judgment for $1,000.

Had the goods been delivered directly to the imposter when he called upstairs at plaintiff's premises, it is clear that plaintiff could not recover under the policy. (*Glenmore Silk Corp.* v. *Fidelity & Guar. Fire Corp.*, 151 Misc. 734.) Here, because Blasberg, plaintiff's employee, carried the goods downstairs to the street and helped the thief load them onto his truck, may we say that when the theft occurred the goods were (1) in the custody of a messenger and (2) in due course of transit, as those terms are used in the policy? We think not.

The messenger indorsement was presumably added for the purpose of extending the coverage. Concededly a shipment made by the assured to its buyer by a messenger is covered by the messenger indorsement if the goods are stolen from him. (The policy makes no distinction between employees and nonemployees of the assured as messengers, and defendant does not contend that an employee may not be a messenger within the meaning of this policy.) Here, however, the assured did not intend transportation of the goods by a " messenger ". They were intended to be transported only by " truck ". The bailee which it was intended should transport the goods to the buyer was the A. Towle trucking company. It is true that

goods may be transported part of the distance by messenger and part of the distance by truck, but to say that Blasberg may be deemed a " messenger " within the meaning of the indorsement because of the aid which he gave the thief in carrying the goods downstairs and in loading them onto the truck would be an undue extension of the term " messenger ". The acts performed by Blasberg were in the nature of those performed by a clerk of the assured or by a truckman's helper or loader.

Even if Blasberg were considered to be a " messenger ", the goods were not started " in due course of transit " as that term is used in the policy. That is one of the terms to which the " messenger " indorsement is subject. As in the case of other forms of transportation, in order for the goods to be covered while in the custody of a messenger, they must be " in due course of transit " at the time of the loss. The parties agree that on the authority of *Rummell* v. *Blanchard* (216 N. Y. 348, 355) and *San-Nap-Pak Mfg. Co.* v. *Firemen's Ins. Co.* (47 N. Y. S. 2d 542, 544, affd. 268 App. Div. 905) goods are " in transit " after they have been delivered to a bailee for the purpose of transportation. The respondent in his brief adds the word " carrier " after the word " bailee " and then writes, " The respondent, however, contends that in the case at bar the bailee or carrier was in law and fact the messenger Blasberg." We do not think the man on the street or, indeed, a lawyer would read the insurance contract in such manner as to make Blasberg either a bailee or carrier. His possession was that of his employer, the assured. There was no bailment to him. The difficulty with the assured's case is that it is straining words, and particularly the word " messenger ", to bring itself within the coverage of a transportation policy which was not written to cover this loss. The transportation had not begun. In the *Rummell* case (*supra*, p. 355) we wrote (CARDOZO, J.) : " Merchandise is not in transit unless it has been delivered to a bailee for the purpose of transportation (*Rosenthal* v. *Weir*, 170 N. Y. 148, 154; *Harris* v. *Pratt*, 17 N. Y. 249, 252)."

Again, the bailee intended by the assured here to transport the goods was the A. Towle trucking company. It did not intend to make Blasberg bailee of the goods for the purpose

of transportation. His act in carrying the goods downstairs and loading them on the thief's truck was in effect the act of his employer in attempting to deliver the articles to the bailee who was to transport them to their destination. The delivery was never made and the transit never commenced.

Respondent relies on *Underwood* v. *Globe Indemnity Co.* (245 N. Y. 111) and *Hanson* v. *National Surety Co.* (257 N. Y. 216). Those cases are not applicable here since in both cases transit had begun and the question involved was whether the transit risk had terminated before the larceny occurred.

The judgment of the Appellate Division and that of the Appellate Term should be reversed, and judgment of City Court affirmed, with costs in this court, in the Appellate Division and in the Appellate Term.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment accordingly.