## Grossbaum Ceramic Art Syndicate, Appellant, v. German Insurance Company of Freeport.

*Insurance—Contract—Oral contract—Charge—Adequacy of charge.*

In an action upon a parol contract of insurance, known as an "oral binder," the purpose of which is to cover property from the time of the application until the policy is issued, it appeared that the evidence was contradictory as to whether such a contract existed, and the trial court in a charge which the Supreme Court held not to be inadequate, misleading, unfair, or argumentative, submitted the case to the jury, and a verdict and judgment for the defendant was returned, which on appeal was affirmed.

Argued Nov. 1, 1905. Appeals, Nos. 158 and 159, Oct. T., 1905, by plaintiffs, from judgment of C. P. No. 1, Allegheny Co., March T., 1903, Nos. 936 and 937, on verdict for defendants in case of The Grossbaum Ceramic Art Syndicate v. The German Insurance Company of Freeport, Illinois, and The Grossbaum Ceramic Art Syndicate v. The Potomac Insurance Company of the District of Columbia. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a parol contract of insurance. Before BROWN, J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows :

In measuring the value of testimony in this case, and in all cases, it is important to keep in view certain leading ideas that help you to measure the force of the testimony. In some cases the testimony, perhaps all of the way through, may be truthful, or some witnesses may be mistaken, and innocently mistaken. You may fail to believe their testimony, or rather fail to give credence or weight to it on the ground that you believe they are innocently mistaken—simply mistaken. On the other hand, you may fail to give value to the testimony because you may believe it bears the impress of perjury.

Another thought is, that the manner and appearance of witnesses upon the stand may help you, to some extent, to deter-

mine the value of the testimony. So that the testimony in a case of some witnesses may be as genuine as a standard coin ; of others it may be as worthless as a counterfeit. It may measure up to par, or be absolutely worthless. Some of it may impress you as being that simply of witnesses who did not intend to testify falsely, or who perhaps were careless, or whose memory as to the facts was wrong.

Coming then to this case, with these suggestions in measuring the testimony, the main turning point is the question whether there was a contract executed here which bound these insurance companies to pay the insurance. There is no contest as to the amount of the loss, and no contradiction of the testimony showing exactly what the loss was. There is no dispute that proofs of loss were sent. But the fact that there was a loss, and the fact that proofs of loss were sent in, does not make a contract. I cannot compel you to pay a loss, arising from fire or from any other source other than a tort, where you do a willful wrong or injury—I cannot compel you to pay the same, based on a contract, simply because I claim it. If you dispute my right, or deny that there was any contract between us, the burden is upon me to show that contract and establish it by the weight of the evidence.

So here, when the plaintiff, the Grossbaum Ceramic Art Syndicate, comes along with claims, based upon contracts, which the company alleges were made with these insurance companies, and the insurance companies contest the point that there were contracts, the burden is upon the plaintiff to satisfy you, by the weight of the evidence, that there was a contract.

A contract for what? A contract covering ceramic art goods located, we will say, at Atlantic City—perhaps not necessarily there, because if the testimony is to be believed, it was, substantially, that a floater policy, which it is alleged was the kind of policy contracted for here, is just what the term floater means—floating about from point to point. I may not recall exactly the cities, but, as illustrating the manner of their business, there was some testimony that in three months they exhibited at perhaps Chicago, Cleveland, Boston, New York and Pittsburg. So that a floater meant a policy that floated around with these goods, and insured them to the extent that the understanding of the parties agreed they should be insured.

Now, was there a contract made? If there was no contract, no binding agreement between these parties, that is the end of the plaintiff's case. The plaintiff must show a contract which binds the defendants. It is for you to determine whether there was a contract, and if so, what it was. It is alleged by the plaintiff that it was a floater policy, and the meaning of that I think is quite clear from the testimony. These policies were policies to the extent of $5,000.

There is some dispute as to whether the goods were to be in Atlantic City. Probably, within the fair atmosphere of all the testimony, the policy was intended to be—but that is for you to say—a floater policy covering Atlantic City, to run a year at the rate of three per cent, and covering any other points within the express arrangement of the parties, if there was an express, definite arrangement made.

It takes three links to make the contract. Two out of the three will not make it. All of the links must be established. If it is clear that the first link in the contract is established, that the minds of these two agents met, and it was clearly understood to be a floater policy to the extent of $5,000, covering ceramic art goods, and then if it is clear that that meant a floater policy—wherever the goods might be, that part of the link would be established, unless the expression, "wherever they might be," was qualified by some other definite arrangement.

If it was definitely understood between them that, while it was to be a floater policy, which meant floating from point to point, the insurance was not to cover every place that these goods might float, or be placed, but was only to cover, say, the best hotels, or high-class hotels and railroad depots; if that is all, even if their minds met to that extent, that is the second point in the case. If they were to cover simply those points, then there could be no recovery in this case, because stores, no matter how good they were, were not part of the arrangement. If the arrangement was generally to cover hotels, depots and good stores, and if this was a fairly good store—which perhaps cannot very well be disputed—then the policy would cover the store. If it did not cover the store, in the sense that the parties agreed, if they agreed at all, but simply covered railroad stations or depots and good hotels, then of course the plaintiff cannot recover.

Then another step or link which would be essential, even if it is all established up to that point, is what were the terms of payment? The rate was three per cent. That cannot be disputed, and if the testimony of Mr. Hast is to be believed, it was to cover a year. It is asserted here, as a principle of law, that because the premium was not actually paid at the time, there could be no recovery. That might, or might not, be a good proposition, but leaving that out of the case, as not for your consideration, we have a set of facts which settle that question, if you believe the testimony.

On the question of payment, within the general scope and method in which these two agents did business with each other, there is testimony that Logue & Brother and Mr. Hast, in the interchange of business—amounting sometimes, as Mr. Hast says, to nine or ten policies a day—and in the hurry of business necessarily, and in accordance with the general custom of all the insurance agents in the city of Pittsburg, credit was extended, in the sense of running accounts—perhaps as a clearing house would run—and clear at the end of twenty or thirty days, or whatever the custom was as between Logue & Brother and Mr. Hast, to settle the balance as shown by the contra accounts. Whatever business Logue & Brother had charged against Hast would be summed up in an account. Whatever business Hast had against Logue & Brother would be summed up, and the difference between the two accounts would represent the cash balance due from one to the other, and then a settlement would be made and the cash paid. If it is true that there was this general custom, not only between these two parties, but generally among the agencies here, insurance agents, to run a line of credit and conduct the business in that way, then it is fair to imply that this transaction, being one of perhaps dozens and dozens had between the parties, went into the account in that way, and therefore it was a sufficient contract, as to that link, and bound these companies.

Mr. Logue, of Logue & Brother, who represented these insurance companies, testifies that the contract was not closed. Of course you are to take your own recollection, and from that point of view weigh the value of the testimony, but I believe Mr. Logue's testimony is that Mr. Hast came to see him—and there is no dispute about that. There was some talk about a

floater policy and Mr. Logue said to him that he would·like to know where these goods were. Mr. Hast replied that he was not sure, but he judged they were at Atlantic City, because the telegram came from there. [Mr. Logue's testimony is that he refused to bind himself, refused to make a contract, unless the location of the property in the floater policy was limited to railroad depots or stations and high class or first class, or best hotels. Now if that story is true, if that is exactly what he agreed to do, and to that extent he was willing to make a contract, and did make a contract, he would be bound only to that extent. If the contract did not include stores, then there was no contract as to stores, and of course these companies would not be liable, and the plaintiff could not recover.] [3]

[Then there is a letter that is important here. Mr. Hast said, in chief, when he was on the stand, that he made an absolute contract. That is, he made a closed contract with Mr. Logue. Not a contract that was subject to any restrictions; not a contract subject to any condition which left the actual full contract open, to be settled afterwards, but that he made a full contract. Mr. Logue denies that. Is Mr. Hast supported in his allegations that at the time he alleges the contract was made, it was actually made, a completed full contract, containing all of the essential links that bound the parties. Is that true ? It is for you to judge, to some extent, as to that, from the letter which Mr. Hast subsequently wrote to Mr. Grossbaum, who is now dead, but who was the president of the plaintiff company at that time.

Mr. Hast wrote Mr. Grossbaum on April 1, 1902, after he had had this alleged conversation with Mr. Logue " We wired you this morning in reply to your telegram as follows, ' $5,000 covered, subject to condition, particulars by mail,' which we now beg to confirm." The condition referred to is, " that it will be absolutely necessary to incorporate the full coinsurance clause in the form in order to get the company to accept the floater business." Now if his testimony in the first instance was, regardless of this letter, that he had actually made a full contract, complete in all its terms, clearly understood by all of the parties, and binding upon the parties, why did he write this letter ? " The, condition referred to is, that it will be absolutely neces-

sary to incorporate the full coinsurance clause in the form—" absolutely necessary to do that in order to do what? In order to get the company to accept the floater business.

From that would you, or would you not, infer that he had not completed his contract? If you infer that he had not completed his contract with Mr. Logue, that the terms were not all fully agreed upon, that there was still something to be done—if that is the true interpretation, there could be no recovery here by the plaintiff, and your verdict would be for the defendant. If the completion of the contract depended upon Mr. Grossbaum's wiring or writing back in reply to this letter, "That is entirely satisfactory, you may close the contract,"— there never was any telegram and never was any letter back from Mr. Grossbaum, prior to the fire, stating he was satisfied to add the coinsurance clause and therefore close the contract. Not having done that, the contract, not having been closed prior to the fire, the defendant would be entitled to a verdict.

I do not know that there is anything more to say, gentlemen, unless we have overlooked something. If there is anything counsel would like to have us call the attention of the jury to, we would be glad to do it. In a general way, and by way of repetition, it is for you to say whether there was a completed contract, completed in the sense that there was no condition attached to it. Completed in the sense that Mr. Logue and Mr. Hast met and talked about it, and agreed that the insurance should be placed, and should be placed in the sense that it was absolutely binding and fixed, and no condition whatever attached to it, and that it covered the goods, in the floater sense, in stores. As before stated, even if the minds of the parties met upon a contract, and that contract did not cover stores, but did cover railroad depots and good hotels, these insurance companies would not have to pay. If they did not contract in their floater arrangement to cover stores, it does not matter how good the stores were, or where they were, they would not be bound to pay. If the contract was to cover merely railroad stations, goods in transit and in good hotels, then that is what the parties agreed upon and are bound by.] [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 3) portions of charge as above, quoting them ; and (2) the charge as a whole was inadequate and misleading.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* with him *O. H. Rosenbaum,* for appellant.

*Edwin P. Young,* with him *Dalzell, Scott & Gordon,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1906 :

These two actions are assumpsit brought by the Grossbaum Ceramic Art Syndicate against the German Insurance Company of Freeport, Illinois, and the Potomac Insurance Company of the District of Columbia, on two preliminary contracts for the insurance of certain ceramic goods which are alleged to have been the property of the plaintiff company, and destroyed by fire at Atlantic City, N. J., on April 3, 1902. The cases involve the same questions and were tried together in the court below. Verdicts were rendered for the defendant companies, and from the judgments entered thereon the plaintiff company has appealed.

There are two assignments, and they allege error in the charge of the court, that it was partial and inadequate. The contracts sued on were verbal and what are know in insurance parlance as "oral binders." Their purpose is to bind or cover the property against loss by fire from the time of the application until a written policy is issued. The plaintiff company alleges that on April 1, 1902, it wired Benswanger & Hast, its brokers, at Pittsburg, to place $5,000 "floating" insurance on its goods then at Atlantic City, and that in pursuance of the message its brokers, on the same day, called on Logue & Brother, the agents of the defendant companies, who accepted a risk of $3,000 for the German company and one of $2,000 for the Potomac company. The plaintiff claims that this was a " floater " contract and was to cover the goods wherever they might be, whether in transit, or in hotels, railroad depots or stores. It is conceded that Mr. Hast called at the office of Logue & Brother on April 1, and informed them of his firm's instructions from the plaintiff company and that a conversation ensued as to placing the insurance. But it is denied by the defendants that

any contract was entered into at that time, and it is claimed by them that in this conversation Mr. H. A. Logue gave Hast the terms on which they would insure the goods in hotels and railroad depots and that Hast said his company would object to the rate, but he would write that night and advise the company what it would have to do to secure the insurance.

On the trial of the cause, the learned judge said in his charge that "the main turning point is the question whether there was a contract executed here which bound these insurance companies to pay the insurance. There is no contest as to the amount of the loss, and no contradiction of the testimony showing exactly what the loss was. There is no dispute that proofs of loss were sent." As stated by the plaintiff company in its printed brief, "the sole issue in the case was raised by conflicting testimony as to whether the contracts sued on had been entered into or not." This necessarily sent the case to the jury. The adequacy of the charge and its fairness are the only questions raised on this appeal.

We are not convinced that the appellant has convicted the learned trial judge of reversible error on either of the grounds laid in the assignments. We do not think the appellant's claim of inadequacy in the charge can be sustained. There was but a single question for the jury, and that was whether the insurance companies had entered into the verbal contracts sued upon. The trial judge eliminated all other questions from the consideration of the jury and told them that their verdict would depend solely upon their finding on that question. After instructing them as to the manner of testing the credibility of the witnesses and defining a "floater" policy, he presented the claims of the respective parties on the question at issue. He told the jury what the plaintiff company must show to establish its contracts. The testimony on each side was partly written and partly oral, but the judge in his charge did not refer to any part of it, except the letter written by Benswanger & Hast to Grossbaum. After thus directing the attention of the jury to the issue, the claims of the parties, and what the plaintiff was required to show to sustain its contracts, the court said: "In a general way, and by way of repetition, it is for you to say whether there was a completed contract, completed in the sense that there was no condition attached to it. Com-

pleted in the sense that Mr. Logue and Mr. Hast met and talked about it, and agreed that the insurance should be placed, and should be placed in the sense that it was absolutely binding and fixed, and no condition whatever attached to it, and that it covered the goods, in the floater sense, in stores. " Immediately preceding this part of his charge, the judge said : " if there is anything counsel would like to have us call the attention of the jury to, we would be glad to do it. " The appellant's counsel availed himself of this opportunity and at his request the court gave further instructions to the jury.

We cannot find, under the circumstances, that the charge was inadequate. If the appellant desired fuller instructions and that the attention of the jury should be directed specifically to any part of its testimony, counsel should have responded to the learned judge's suggestion and requested such detailed instructions as he desired. The charge was already of sufficient length to furnish adequate instructions to the jury, and if the appellant company considered it deficient or lacking in presenting any part of the testimony, the judge's attention should have been directed to the matter, when, as he suggested, he would have given additional instructions.

Nor can the charge be condemned for unfairness or partiality. It is true the plaintiff claimed that the contract was closed at the interview between the agents of the respective parties, and that it contained a coinsurance clause, but this was strenuously denied by the defendants. They maintained that the contract was not closed, and that their proposition to insure the plaintiff's goods was on the condition, yet to be accepted, that the policy should contain a coinsurance clause. It was, therefore, proper, and certainly not unfair, for the judge, in calling attention to the matter to refer to the correspondence between the plaintiff and its brokers, which bore directly on the question. This is what he did, and we do not see that his manner in presenting it to the jury was misleading or had any tendency to give any undue weight to it against the plaintiff. There is certainly nothing in the record or verdict that leads to such a conclusion. While the jury might have interpreted this correspondence as the plaintiff does, they certainly could not be convicted of clear error in sustaining the defendants' construction of it, that, at the close of the interview between Hast and

Logue, the proposed contract needed the confirmation of the plaintiff company to complete it.   Whatever may have been the necessity for speedy action in securing the insurance, as suggested by the appellant's counsel, the telegram and letter of Benswanger & Hast to the plaintiff are strongly corroborative, if not conclusive, in support of the defendants' position that the contract was open and "subject to conditions" which required the acceptance of the plaintiff to complete it.   It might have been error for the learned judge to have failed to advert to this correspondence in his charge, but it was unquestionably neither error nor unfairness for him to direct the jury to consider it in determining the question whether the contract between the parties had been fully completed.

The charge is not justly open to the objection that it is argumentative in favor of the defendants.   In referring to the letter written to Grossbaum, the court did not, as claimed by the appellant, ignore the testimony of Benswanger and Hast.   That testimony was before the jury and was commented on by counsel, and hence whatever support it gave to the existence of the alleged contract was presumably given due weight by the jury.

It was not error for the court to charge the jury that the plaintiff could not recover unless the contract included stores, nor did the court in adverting to stores raise an issue not in the case, as contended by appellant's counsel.   The plaintiff claimed that there was a contract and that it covered goods in stores as well as those in hotels and railroad depots.   The defendants not only denied the existence of a contract, but alleged, and introduced testimony to show, that in the conversation in which it was claimed the contract had been entered into, their agent had agreed to accept the risk on goods only in railroad depots and hotels on the condition that the plaintiff would carry full coinsurance.   It was, therefore, contended by the defendants that if there was a contract it covered goods only in hotels and railroad depots and not those in a store where the plaintiff's goods were alleged to have been when they were destroyed.   Hence, it was not error for the court to tell the jury that to entitle the plaintiff company to recover, it was required to show a "floating" contract which covered goods in stores.

The assignments of error are overruled and the judgment is affirmed.