**LLOYD'S OF LONDON, et al., Appellants,**

v.

**H.W. WALKER, et al., Appellees.**

No. 05–85–00640–CV.

Court of Appeals of Texas, Dallas.

July 30, 1986.

Rehearing Denied Sept. 16, 1986.

L.W. Anderson, Dallas, for appellants.

William R. Keffer, W. Bruce Monning, Dallas, for appellees.

Before AKIN, HOWELL and HOLL-INGSWORTH, JJ.

AKIN, Justice.

This is an action on an insurance policy. The appellants, certain underwriters at Lloyd's of London, and Dub Martin & Co., Inc., their agent in Texas (hereinafter collectively "Lloyd's"), appeal from a judgment rendered for H.W. Walker, Walker Service and Equipment Company and Houston Coin-Op Equipment Sales, Inc. (hereinafter collectively "Walker"). In fifteen points of error, Lloyd's contends that the trial court erred: 1) in delaying judgment for six years from the date of trial; 2) in rendering judgment against Dub Martin; 3) in rendering judgment in favor of Walker Service and Equipment Co.; 4) in rendering a judgment for Walker that did not conform to the pleadings; 5) in granting Walker's motion to reinstate the dismissed case; and 6) in rendering judgment for Walker because the alleged losses were for equipment not covered by the policy and occurred at premises not covered by the policy. Because these contentions lack merit, we affirm.

Walker sold coin-operated laundry, dry-cleaning, and car-wash equipment to operators of establishments throughout Texas. Typically, Walker and its purchasers engaged in a conditional sales transaction, with Walker retaining a security interest in the equipment. In connection with this business, Walker purchased "surplus line" insurance from appellants.

In the course of Walker's business, the operators sometimes defaulted on equipment payments necessitating repossession. Having repossessed, Walker would, on occasion, take over the vendee's operation, assume the premises lease of its vendee, and operate in the same manner as its former vendee. Walker suffered losses due to vandalism or fire at three such establishments. It filed a claim with Lloyd's, who refused payment on the policy. Walker sued. After a nonjury trial, six years elapsed before the court rendered judgment in Walker's favor and supported its judgment by findings of fact and conclusions of law.

In its first four points of error, Lloyd's contends that the trial court erred in delaying rendition of judgment in this cause for six years because the delay was unreasonable, caused Lloyd's "embarrassment and undue hardship," violated rule 330(i) of the Texas Rules of Civil Procedure, and was in violation of Canon 3 of the Code of Judicial Conduct. The trial in this cause took place in 1979. In 1981 both Walker and Lloyd's moved for findings of fact and conclusions of law and judgment. Nothing further occurred in this cause until February 12, 1985, when the cause was dismissed.

Walker then filed a motion to reinstate, which was opposed by Lloyd's, but granted by the trial court on March 7, 1985. The trial court rendered judgment for Walker on March 11, 1985. In its motion for new trial, Lloyd's nowhere asserted that the judgment was improper because of the lapse of time, although it did argue in its motion opposing reinstatement that Walker should be barred by laches from obtaining judgment because of the lapse of six years from time of trial to entry of judgment. We do not agree that the rendition of judgment was improper in this case.

■ Rule 330(i) provides in pertinent part:

### Acts in Succeeding Terms

If a case or other matter is on trial, or in the process of hearing when the term of court expires, such trial, hearing or other matter may be proceeded with at the next or any subsequent term of court and no motion or plea shall be considered as waived or overruled, because not acted upon at the term of court at which it was filed, but may be acted upon at any time the judge may fix or at which it may have been postponed or continued by agreement of the parties with leave of the court.

TEX.R.CIV.P. 330(i). Thus, the rule itself contains no time limit in which a court must act in rendering judgment—to the contrary, it may act at the next or *any* subsequent term. Although the rule itself contains no time limit, Lloyd's contends that we should infer a limit of "reasonableness." We need not decide in this case whether such a limitation should be imposed on rule 330(i) because Lloyd's has failed to demonstrate how the time here was unreasonable, or how the delay resulted in harm to it. We hold that the burden to show unreasonableness and harm rests upon the appellant. *See Bryant v. Bruner,* 593 S.W.2d 358, 362 (Tex.Civ.App.—Texarkana 1979, no writ) (delay of thirteen months not shown by the appellant to be unreasonable or to have harmed him); *see also Cahn v. Schmitz,* 56 Ariz. 469, 108 P.2d 1006, 1008–09 (1941); (seven-year delay not shown to be unreasonable); *Wallace Grain & Supply Co. v. Cary,* 374 Ill. 57, 28 N.E.2d 107, 108–09 (1940) (five-year delay not shown to be unreasonable). *Industrial Loan & Thrift Corp. v. Benson,* 221 Minn. 70, 21 N.W.2d 99, 101 (1945) (nine-year delay not shown to be unreasonable); *De Lao v. Garcia,* 96 N.M.App. 639, 633 P.2d 1237, 1238 (1981) (in spite of rule requiring "prompt" judgments, since no time limit is stated, judgment may be entered .at "anytime" unless the delay is shown to be unreasonable, an independent right has intervened, or the court has lost jurisdiction.)

■ Here, Lloyd's asserts that it has been caused hardship and "embarrassment" by the delay because the various underwriters at Lloyd's "may be difficult to locate, or without sufficient resources ... or may even be deceased." Such tentative hypotheses are not sufficient to show harm rendering entry of judgment erroneous. Lloyd's also contends that Howard Walker, an individual plaintiff in this case, has died, leaving the "embarrassing question" of to whom the judgment should be paid. The judgment decreed that "H.W. Walker, individually and doing business as Walker Service and Equipment Company, Inc. and Houston Coin-Op Equipment Sales, Inc." recover of appellants a certain sum of money. If H.W. Walker has no estate to accept payment from appellants, and the issue arises as to who has succeeded to the rights of Walker or the above corporations, appellants may pay the amount of the judgment into court and, if conflicting claims are presented, may bring an interpleader action for determination of those persons entitled to the funds. We hold that death of the plaintiff alone does not state a sufficient cause for holding the judgment to have been entered in error.

■ We conclude that violation of the Code of Judicial Conduct, Canon 3A(5), by failing to "dispose promptly of the business of the court," if there was such a violation, would not constitute reversible error. *See Bryant,* 593 S.W.2d at 362. The law pro-

vides better methods of disciplining dilatory judges than depriving a successful litigant of judgment on a meritorious claim. Lloyd's has failed to show that no reasonable excuse exists for the judge's delay. The record indicates that Lloyd's failed to bring the matter to the court's attention from 1981 to 1985. Only upon rendition of a judgment adverse to Lloyd's has it belatedly argued that the delay was unreasonable. Although we cannot condone this delay by the judge, if it was his delay, we hold that, absent proof of some significant injury to appellant Lloyd's, or of some other factor rendering the delay unreasonable, a six-year delay between trial and rendition of judgment is not unreasonable as a matter of law, and thus the trial court did not commit reversible error.

In points of error five, six, and seven, Lloyd's contends that the trial court erred in rendering judgment against Dub Martin & Co., Inc. because the parties to the insurance policy had contractually provided that Dub Martin would not be liable for any claims under it; the trial judge had orally dismissed this defendant from the case at trial, granting it judgment; and the judgment against Dub Martin was improper under article 1.14–2 section 11 of the Texas Insurance Code.

The relevant provision of the insurance policy is as follows:

It is expressly understood and agreed by the Assured, insurance agent or broker, any morgagee or other parties who may have an interest in this insurance, that McNiel & Coulson Agency, Inc. is not one of the Underwriters or Insurors hereunder and *is not nor shall be in any extent liable for any loss or claim whatsoever*, but that the insurors are those Underwriters whose names appear herein.

[Emphasis added]. The trial court found that Dub Martin acquired McNiel & Coulson Agency, Inc. and thereby assumed its obligations, including those under this policy. Consequently, judgment was properly rendered against Dub Martin only if it would have been properly rendered against McNiel & Coulson. Because we disagree with each of Dub Martin's contentions, we hold that judgment was properly rendered against it.

First, article 18.23 of the Insurance Code provides that underwriters at a "Lloyds" (which these underwriters are) shall be exempt from all provisions of the Insurance Code except those under article 18 and those which are specifically said to apply. Article 1.14–2, § 11 is not specifically made applicable. Consequently, even if article 1.14–2, § 11 did preclude suit against the agent, which it does not, article 18.17 of the Insurance Code would be the controlling statute because this is a policy issued under a "Lloyd's plan," as that term is used in article 18 of the Insurance Code. Article 18.17 provides in pertinent part:

Action on *any policy or contracts of insurance made by the attorney for the underwriters may be brought against the attorney or against the attorneys and the underwriters or any of them* .... A judgment in any such action against the attorney or against any of the underwriters shall be binding upon and be a judgment against each and all of the underwriters as their several liabilities may appear in the contract of insurance on which the action is brought.

[Emphasis added]. The term "attorney for the underwriters" is defined in article 18.02 as the "attorney ... or attorney in fact or other representative" acting for the underwriters. Thus, McNiel & Coulson was the attorney for Lloyd's in this case, and Dub Martin has replaced McNiel & Coulson in that capacity.

■ We hold that under article 18.17 suit is properly brought against the "attorney" of the underwriters of a policy issued under a Lloyd's plan. *See Grace v. Rahlfs*, 508 S.W.2d 158, 160–161 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.). Although the policy of insurance here attempted to limit the liability of the attorney, that provision, to the extent it conflicts with an express statutory provision, is unenforceable. *Williams v. Williams*, 569 S.W.2d 867, 870 (Tex.1978); *Gorman v. Gause*, 56 S.W.2d

855, 858 (Tex. Comm'n App.1938, judgm't. adopted); *Wilson v. Teacher Retirement System of Texas,* 617 S.W.2d 329, 332 (Tex. Civ.App.—Amarillo 1981, no writ); *McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.). We hold, therefore, that, to the extent the policy attempted to preclude suit on the policy against the "underwriter's attorney," the policy is unenforceable. We further hold, however, that this provision is severable from the remainder of the policy and has no effect on the validity of the remainder of the contract. *See Williams,* 569 S.W.2d at 871.

■ Furthermore, nothing in article 1.14–2, Section 11 of the Insurance Code conflicts with personal liability of an agent under a surplus-lines insurance policy. TEX.INS.CODE ANN. art. 1.14–2, § 11 (Vernon 1981). That section provides that a surplus-lines insurer may be sued pursuant to the same procedures as for suit against an unauthorized insurer. It further requires designation in the policy of the person to whom process shall be mailed. This in no way precludes liability of an agent in addition to that of the insurer.

■ Finally, we reject Lloyd's contention that the trial judge, upon orally granting Dub Martin's motion to dismiss, lost jurisdiction to act further on that issue. To the contrary, this order was interlocutory; therefore, even had the judge entered a written order dismissing Walker's claim against Dub Martin, he retained full discretion to change his mind and set it aside or amend it at any time before final judgment on the merits of the whole case or prior to entering an order severing that part of the cause and allowing it to become final. *Stout-Jennings-Schmidt Co. v. Schmidt,* 615 S.W.2d 267, 269 (Tex.Civ.App.—Dallas 1981, writ dism'd); *Prince v. Peurifoy,* 396 S.W.2d 913, 916–17 (Tex.Civ.App.—Dallas 1965, no writ).

In points of error eight through twelve, Lloyd's contends that judgment should not have been rendered in favor of "Walker Service and Equipment Company" because Walker attempted to add this plaintiff by a trial amendment that was never granted or, if granted, "operated as a suprise to [Lloyd's]." Alternatively, Lloyd's argues that Walker's fourth amended petition attempted to add this party plaintiff, for which no leave to file was granted by the trial court. As a second alternative, Lloyd's claims that judgment for this entity was error because Lloyd's did not receive notice that "Walker Service and Equipment Company" was a party until six years after trial. Finally, Lloyd's asserts that, if the pleadings were not properly amended, then the judgment was in error because it did not conform to the pleadings properly before the court. We do not agree that the pleadings were not properly amended; consequently, we hold that the judgment did conform to the pleadings.

■ Rule 63 of the Texas Rules of Civil Procedure provides that trial amendments offered within seven days of trial or thereafter "shall be filed only after leave of the judge is obtained, which leave shall be granted ... unless there is a showing that such amendment will operate as surprise of the opposite party." TEX.R.CIV.P. 63. The record here does not disclose whether leave for either the trial amendment or the amended pleading was granted, but since it was obviously considered by the court, leave is presumed. *Swinney v. Winters,* 532 S.W.2d 396, 400 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Any failure by Walker to obtain leave of court to file the amended petition was cured by the trial court's action in considering that petition. *West v. Touchstone,* 620 S.W.2d 687, 689 n. 2 (Tex.Civ.App.—Dallas, 1981, writ ref'd n.r.e.); *Swinney,* 532 S.W.2d at 400.

■ Lloyds' assertion that it was "surprised by that one also" when Walker requested a trial amendment is not a sufficient showing of surprise under rule 63 for us to hold that the trial court abused its discretion in granting the leave requested. *Wendell v. Central Power and Light Co.,* 677 S.W.2d 610, 619 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Hartford*

*Accident & Indemnity Co. v. Thurmond,* 527 S.W.2d 180, 191 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Furthermore, the contention that Lloyd's had no knowledge that Walker Service and Equipment Company was a party until six years *after trial is hardly credible in view of the* numerous references to that entity during the trial. Also, Walker contends that that entity was named as a party plaintiff in the original, first, and second amended petitions. We do not have those petitions in the record before us, and we must presume, therefore, that the record would support the judgment of the trial court on this issue. Because plaintiff Walker's fourth amended petition was properly before the court, the judgment was in conformity with the pleadings.

■ In its thirteenth point of error, Lloyd's argues that the trial court abused its discretion in granting Walker's motion to reinstate the case after it had been dismissed in 1985. We disagree. Lloyd's contends that the six-year delay between trial and judgment is "prima facie" evidence of Walker's conscious indifference to prosecution of this case. But in its motion to reinstate, Walker asserted that H.W. Walker had filed bankruptcy sometime after submission and that a motion "has been filed" in the bankruptcy court to remove the automatic stay and allow the case to continue to judgment. The record does not inform us of when the bankruptcy was filed, but the trial court was justified in taking that filing into consideration in its determination. The action of a trial court in granting an application for reinstatement is an exercise of its discretion and will not be disturbed on appeal unless shown to have been an abuse of that discretion. *See Veteran's Land Board v. Williams,* 543 S.W.2d 89, 90 (Tex.1976); *Bolton's Estate v. Coats,* 608 S.W.2d 722, 727 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r. e.). Accordingly, we hold that delay, even a six-year delay, in and of itself, does not constitute a sufficient showing by the appellant that the trial court abused its discretion in reinstating the case.

In points of error fourteen and fifteen, Lloyd's argues that the losses at issue were not covered by the terms of the policy for two reasons. First, the equipment had been repossessed by Walker at the time of the damage and was, therefore, not covered by the terms of the policy. Second, the premises upon which the equipment was kept at the time of its damage were "owned, rented or leased" by Walker at the time of damage and thus were not covered by the policy. We disagree with both of these contentions. The controlling provisions of the policy, in relevant part, are as follows:

### SPECIAL FLOATER FORM

#### 1. PROPERTY COVERED

(a) This policy covers merchandise consisting principally of laundry, dry cleaning, air conditioning and car wash equipment sold by the insured on deferred payments or under conditional sales agreements, both prior and subsequent to the attachment of this policy.

(b) This policy also covers such merchandise when leased, loaned, rented or sent out on approval by the insured provided the value of such property is included in the monthly report submitted to the Company.

(c) This policy insures the interest of the assured and purchaser until fully paid for by the Vendee....

#### 5. THIS POLICY COVERS:

While in buildings excluding premises owned, rented, leased or used for storage or exhibition purposes by the insured against direct loss or damage caused by:

(a) Fire and Lightning, Tornado, Wind, Hail, Flood;

(b) Riot and Civil Commotion, Vandalism & Malicious Mischief, Falling Aircraft, Explosion and Smoke.

In its findings of fact, the trial court found that Walker had sold various merchandise to the owners of Spring Laundry in Spring, Texas, Tomball Coin Wash in Tomball, Texas, and the Haskell Street Coin Wash in Dallas, Texas under condi-

tional sales agreements. The court further found that, at the time of the losses, each of these washaterias was operated by someone other than Walker and that the equipment had not been fully paid for by the purchaser at the time of loss. Finally, the trial court found that, at the time of the losses, none of the equipment was located in buildings owned, rented, leased or used for storage or exhibition purposes.

Lloyd's contends, however, that the evidence at trial showed that the equipment at issue had all been repossessed by Walker at the time of the loss and was thus no longer "sold ... under conditional sales agreements." Further, Lloyd's asserts that the evidence at trial showed that, at the time of loss, the equipment was located at premises owned, rented, or leased by Walker and thus was excluded from coverage under section 5 of the policy, as set forth above. We disagree with Lloyd's proposed interpretation of these provisions of the insurance policy. Consequently, we overrule these two points of error.

We must interpret and construe insurance policies liberally in favor of the insured and strictly against the insurer, especially when dealing with exceptions and words of limitation. *Kelly Associates, Ltd. v. Aetna Casualty and Surety Co.*, 681 S.W.2d 593, 596 (Tex.1984); *Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 721 (Tex. 1982); *Ramsay v. Maryland American General Insurance Co.*, 533 S.W.2d 344, 349 (Tex.1976). When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction that favors the insured and permits recovery. *Kelly*, 681 S.W.2d at 596; *Blaylock*, 632 S.W.2d at 721; *Ramsay*, 533 S.W.2d at 349; *Jones v. American Economy Insurance Co.*, 672 S.W.2d 879, 880 (Tex.App.—Dallas 1984, no writ); *Adrian Associates v. National Surety Corp.*, 638 S.W.2d 138, 140 (Tex.App.—Dallas 1982, writ ref'd. n.r.e.).

Most importantly in this case, we must adopt the construction of an "exclusionary clause" favoring the insured so long as that construction is not itself unreasonable, even if the construction offered by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Kelly*, 681 S.W.2d at 596; *Glover v. National Insurance Underwriters*, 545 S.W. 755, 761 (Tex.1977); *Adrian Associates*, 638 S.W.2d at 140. Thus, we examine the terms of the policy and, if ambiguous, we adopt the insured's interpretation of the policy, if reasonable, even if the insurer's proposed interpretation might appear the more reasonable to us. This is so because the insurer wrote the contract, and, had it wished to create exclusions or limitations to the coverage of the policy, it should have done so with words that clearly and unambiguously expressed that intent. *See Glover*, 545 S.W.2d at 763–64; *Adrian Associates*, 638 S.W.2d at 140; *International Investors Life Insurance Co. v. Utrecht*, 536 S.W.2d 397, 400 (Tex.Civ.App.—Dallas 1976, no writ).

■■■ In this case, Lloyd's contends that the words of limitation which say that the policy covers equipment "sold ... under conditional sales agreements" applies only while the goods are in the possession of the purchaser under such an agreement and that coverage ceases upon repossession. It argues that this interpretation is further supported by that provision which reads that the policy is in effect "until [the equipment is] fully paid for by the Vendee." We cannot agree with this contention because we cannot write a limitation into an insurance policy where none exists. *Jones*, 672 S.W.2d at 880. Walker contends that these same provisions provide for coverage of equipment once sold under a conditional sales agreement and until paid for. The equipment for which coverage is claimed was, without dispute, sold originally under conditional sales contracts and was not fully paid for. Hence, coverage continues after repossession under the express terms of the policy. If these provisions were ambiguous, which they are not, we would be required to adopt the construction urged by Walker since that is a reasonable interpretation of the provisions. Had Lloyd's

wished to exclude repossessed equipment from coverage, it could easily have done so. Because it chose not to include such a limitation or exclusion, we hold that the repossessed property was covered by this policy of insurance.

■■■ Lloyd's also asserts that the provision of the policy which provides for coverage for damage while the equipment is in buildings "excluding premises owned, rented, leased or used for storage or exhibition purposes by the insured ..." means that equipment in buildings owned, rented, or leased by the insured is excluded. On the other hand, Walker contends that the clause excludes equipment *stored* or *exhibited* by the insured in buildings owned, rented, leased, or used for those purposes by it. The evidence shows that the equipment in question was neither "stored" nor "exhibited," but was being used by Walker, who had taken over the operations of his vendees. This clause is, at most, ambiguous. Hence, the interpretation urged by Walker, because it is reasonable, must be adopted by us in reading the policy. Consequently, because the trial court found the equipment was not being "stored or exhibited," we overrule this point of error.

The judgment of the trial court is affirmed.

HOWELL, J., files a dissenting opinion.

HOWELL, Justice, dissenting.

I dissent. Blindly applying the undeniable rule that insurance policies must be construed in favor of the insured, the majority has found coverage where none was ever intended. In doing so, it has ignored other valid principles of construction and common sense as well.

Construction in favor of the insured is a principle too well established to be questioned. However, it is not the be-all and end-all of insurance law. The Supreme Court has written:

We recognize the general rule that contracts of insurance are to be strictly construed in favor of the insured, but this does not affect the further general rule that contracts of insurance are to be construed as other contracts, and that all parts of the contract are to be taken together, and such meaning shall be given to them as will carry out and effectuate to the fullest extent the intention of the parties.

*United American Insurance Co. v. Shelby,* 161 Tex. 162, 338 S.W.2d 160, 162 (Tex. 1960).

The parties' intent is to be derived from the words used, the subject matter to which they relate, and matters naturally or usually incident thereto. *Nutchey v. Three R's Trucking Co.,* 674 S.W.2d 928, 930 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

Viewing the policy as a whole, it is evident that it was meant to insure Walker's interest in equipment that was out of his possession and in the possession of his purchasers.[1] The operative part of the policy is entitled, "Special Floater Form." The term "floater" has a particular meaning in the insurance industry. It means "a policy that floated around with the goods and insured them wherever they were ..." *Grossbaum Ceramic Art Syndicate v. German Ins. Co.,* 213 Pa. 506, 62 A. 1107, 1108 (1906). "The purpose of such policy is to provide indemnity for property which cannot, because of its frequent change of location and quantity be covered by specific insurance." *Davis Yarn Co. v. Brooklyn Yarn Dye Co.,* 293 N.Y. 236, 56 N.E.2d 564, 570 (1944). *See Morgan v. Badger Mutual Ins. Co.,* 192 F.Supp. 249, 251–52 (N.D.Fla.1961). Floater insurance was particularly suitable to Walker's original conditional sales plan with the equipment leaving his control and being used at a large number of locations. It was not appropriate to entreprenurial ventures where the property was under Walker's sole management and control at a specific location.

1. Despite the trial court's finding of fact (Maj. op. 104–105), it is undisputed that Walker was at the time of each disputed loss, the proprietor of each premises where a loss occurred. The fact that Walker had, in each instance, retained someone to manage the premises for him is of no legal significance.

In addition to equipment under conditional sales and deferred payment plans, the policy also protected property when "leased, loaned, rented or sent out on approval by the insured...." Again, the common denominator was that Walker had no direct control of the property. The insurance contract's manifest design was to insure against risks *away from the possession and control of the insured.*

The policy contemplated a limited time frame for the covered risk. Walker's interest was insured until the equipment was "fully paid for by the vendee." When final payment was made, coverage was to cease. Walker's interpretation makes the risk run for the life of the policy. This writer would hold the proper construction to be that when the sale failed and the property returned to the possession and control of the seller, it was no longer covered.

If Walker were to open a coin operated laundry stocked with new equipment, he could not contend that the policy in question provided coverage. However, were he to continue the use of repossessed equipment in the same location and manner as his former vendee, he would, under his theory, be fully covered. Thus, coverage would turn on a fortuitous factor—the involvement of the equipment in a prior conditional sales transaction—completely unrelated to the underlying risk. This could not have been the parties' intention.

Further support for the denial of coverage is found in the clause "excluding premises owned, rented, leased or used for storage or exhibition purposes by the insured." The majority would stand this clause on its head and construe it as reading:

Excluding premises (1) owned for storage or exhibition purposes, (2) rented for storage or exhibition purposes, (3) leased for storage or exhibition purposes, or (4) used for storage or exhibition purposes.

The construction is strained and nonsensical. If the clause be viewed as a special endorsement applicable to this insured only, for what purpose would these parties have created a "storage or exhibition" exclusion? The evidence suggests none. On the other hand, if the more probable view, that the clause is a standard policy provision, be applied, for what reason would the insurer desire to exclude "storage or exhibition" and cover the property in all other instances? The majority construction is without logic.

Read with the rest of the policy, it is far more likely that the exclusion was included precisely to create classic "away from the insured" floater type insurance:

Excluding premises (1) owned by the insured, (2) rented by the insured, (3) leased by the insured, or (4) used for storage or exhibition purposes by the insured.

Read from the four corners of the policy, all indicia of intent suggest that the parties did not intend the risk before us to be covered. It is improper to apply the rule of construction in favor of the insured for the purpose of creating coverage where none was intended.

This writer is driven to the conclusion that the phrase "sold by the insured by deferred payments or under conditional sales agreements" refers to property subject to those arrangements at the time of loss. It does not refer to property *formerly* subject to deferred payment or conditional sale but now being directly owned and used by the insured. I would reverse the trial court's judgment and render judgment for appellants.