

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00004-CV

_____

IN THE MATTER OF THE MARRIAGE OF LISA MOZLEY
AND WILLIAM MOZLEY, AND IN THE INTEREST OF F.M., A CHILD

On Appeal from the 303rd District Court
Dallas County, Texas
Trial Court No. DF-14-06301

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After a voyage of almost twenty-nine years, the marriage of Lisa Mozley and William "Rick" Mozley unfortunately hit the rocks. The wave that finally broke over the marriage and drove it ashore was Rick's admitted extramarital affair with family "friend," Mollie. To be sure, there had been other waves pushing the marriage toward its dissolution. Rick had admitted to an earlier affair, adding to a still earlier affair Lisa had had. Other less devastating waves that played a role in the marriage's end included persistent disagreements concerning money, intimacy, and what values to teach their children.

The couple sought and received a divorce. Though they had asserted grounds that included insupportability, Rick's infidelity, and Lisa's cruelty, the Dallas County[1] trial court, after a year of contentious litigation and three days of trial, granted the divorce based on insupportability, awarded each party his or her separate property, divided the community assets proportionately, and denied Lisa's request for spousal maintenance. Lisa appeals, urging multiple grounds for reversal.

We affirm the trial court's judgment because (1) it was within the trial court's discretion to base the divorce on insupportability, (2) it was within the trial court's discretion not to award Lisa a disproportionate share of the marital estate and not to award spousal maintenance, and (3) the trial court's response times were not unreasonable.

_____

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

Each of Lisa's issues is to be reviewed using an abuse-of-discretion standard. *Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 WL 787828, at *1 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.); *see also Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied). An abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.). Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are relevant factors in determining whether the trial court abused its discretion. *Pickens*, 62 S.W.3d at 214.

No findings of fact or conclusions of law appear in this record. Therefore, we are to presume that the trial court "made all findings necessary to support its judgment[,] and we affirm if there is any legal theory sufficiently raised in the evidence in support of the judgment." *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 21 (Tex. App.—Texarkana 2012, no pet.) (citing *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)); *see Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011). However, since the reporter's and clerk's records were filed, these implied findings are not conclusive, and the legal and factual sufficiency of the evidence may be challenged. *Nat'l Fire Ins. Co. of Hartford v. CE Design, Ltd.*, 429 S.W.3d 806, 810 (Tex. App.—Dallas 2014, no pet.).

*(1)    It Was Within the Trial Court's Discretion To Base the Divorce on Insupportability*

Lisa and Rick were married June 29, 1985. For the first sixteen years of their marriage, Lisa worked as a school teacher. She quit teaching when their youngest child was born. In the

3

second year of their marriage, Rick was hired by Judd, Thomas, Smith & Company, a prominent certified public accounting firm. He became a partner in the firm around 1997. The couple had two children, Andrew and Farish, who were twenty-five and nineteen years of age, respectively, at the time of trial. During the course of their marriage, Lisa and Rick amassed a sizeable community estate, including their marital home, a ranch, Rick's partnership interest, Rick's 401k plan at his firm, Lisa's retirement benefits from teaching, and investments. In addition, Lisa inherited oil and gas interests, stocks, and royalty income from her grandparents.

In February 2014, Rick began an extramarital affair with Mollie. Then, on March 28, Rick asked Lisa for a divorce. When asked if he was having an affair, Rick initially denied it. Lisa soon discovered the truth and filed this action.

The trial court granted the divorce based on insupportability. Lisa complains that the trial court erred in failing to grant her a divorce based on Rick's adultery. She argues that, since Rick admitted to his ongoing affair with Mollie and the earlier extramarital affair, and because he showed no remorse, the trial court should have granted her a divorce on the grounds of adultery. "On the petition of either party to a marriage, the court may grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation." TEX. FAM. CODE ANN. § 6.001 (West 2006). This provision gives the trial court discretion to grant a divorce based on insupportability when there is legally and factually sufficient evidence to support such a finding. *In re S.B.H.*, No. 05-14-00585-CV, 2016 WL 462495, at \*6 (Tex. App.—Dallas Feb. 5, 2016, no pet.) (mem. op.); *Baker v. Baker*, 469 S.W.3d 269, 279–80

4

(Tex. App.—Houston [14th Dist.] 2015, no pet.). Unlike the at-fault grounds for divorce, this provision "does not require the trial court to grant a divorce to either party." *Clay v. Clay*, 550 S.W.2d 730, 733 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ); *see, e.g.*, TEX. FAM. CODE ANN. § 6.003 (West 2006) (providing that "[t]he court may grant a divorce *in favor of one spouse* if the other spouse has committed adultery" (emphasis added)).

Lisa does not challenge the sufficiency of evidence supporting the trial court's granting of the divorce based on insupportability. Certainly, the evidence supports the trial court's judgment. At trial, Lisa testified that there had always been issues regarding money, intimacy, and sex. Although she sought counseling, Rick only attended a few sessions. She also testified that, early in the marriage, she had an extramarital affair that continued to be a source of irritation during the marriage. Lisa testified that, after she discovered his affair, she moved out of the marital home in Dallas and eventually moved to Austin to avoid seeing Rick with Mollie. She also testified of Rick's deceit in allowing Lisa to use her separate property to fund part of the purchase price of their ranch when he had had an extramarital affair a few months earlier. Lisa accused Rick of cruelty in carrying on the affair with Mollie and allowing her to insinuate herself into their lives. Rick testified that he had been unhappy in the marriage for a long time and that he had not felt any sense of partnership with Lisa in the marriage since before 2010. He admitted to his extramarital affair with Mollie. He also testified that he had had another extramarital affair in 2010 that Lisa did not know about until after the divorce was filed. He maintained that Lisa and he had disagreed over money their entire marriage and that he disagreed with Lisa over the morals and values to be taught to their children. In addition, Lisa testified that she had attempted to reconcile with Rick,

5

but had been unsuccessful. This is sufficient evidence to support the granting of the divorce based on insupportability.

No doubt, given Rick's admissions, the evidence would also support a finding of adultery. *See* TEX. FAM. CODE ANN. § 6.003. However, Section 6.003 is also discretionary. *S.B.H.*, 2016 WL 462495, at *7; *Applewhite*, 2014 WL 787828, at *1; *Lisk v. Lisk*, No. 01-04-00105-CV, 2005 WL 1704768, at *5 (Tex. App.—Houston [1st Dist.] July 21, 2005, no pet.) (mem. op.). When there is evidence of both insupportability and adultery, the trial court has discretion to grant the divorce on either ground. *S.B.H.*, 2016 WL 462495, at *7. In such cases, the trial court does not abuse its discretion by granting a divorce based solely on insupportability. *Id.*; *see also Baker v. Baker*, 469 S.W.3d 269, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (when evidence could support granting of divorce on both cruelty and insupportability, no abuse of discretion to grant divorce solely on the basis of insupportability); *Applewhite*, 2014 WL 787828, at *1–2 (when evidence supported both adultery and insupportability, no abuse of discretion in granting divorce solely on the basis of insupportability). Here, the trial court did not abuse its discretion in granting the divorce based on insupportability.

*(2)     It Was Within the Trial Court's Discretion Not To Award Lisa a Disproportionate Share of the Marital Estate and Not To Award Spousal Maintenance*

Lisa also complains that the trial court erred in not considering fault in the marriage and in not awarding her a disproportionate share of the community estate and spousal maintenance. Lisa's primary argument is that the trial court should have found fault because of Rick's admitted adultery and that it should have awarded her, as the innocent spouse, the benefits she would expect from the continuation of the marriage. This would include both a disproportionate portion of the

6

community estate and spousal maintenance. Lisa also points out that Rick's earning capacity, as a partner in a successful CPA firm, greatly exceeds her earning capacity as a teacher and one that has not taught in twenty years.

In its decree, the trial court is required to order a division of the community estate in a manner that it deems just and right, having due regard for the rights of the parties. TEX. FAM. CODE ANN. § 7.001 (West 2006); *In re K.R.C.*, No. 05-13-01419-CV, 2015 WL 7731784, at *4 (Tex. App.—Dallas Dec. 1, 2015, pet. filed) (mem. op.). The trial court has discretion in dividing the community estate, and we presume that it exercised its discretion properly. *Murff*, 615 S.W.2d at 699. The property division need not be equal, and the trial court may consider such factors as each party's earning capacity, business opportunities, and education, their physical and financial conditions, the size of their separate estates, and the benefits the innocent spouse would have derived from the continuation of the marriage. *Id.* Further, since Rick and Lisa had been married at least ten years, the trial court could order spousal maintenance only if it found, on dissolution of the marriage, (1) that Lisa would lack sufficient property, including her separate property, to provide for her minimum reasonable needs and (2) that she lacked the ability to earn sufficient income to provide for her minimum reasonable needs. *See* TEX. FAM. CODE ANN. § 8.051(2)(B) (West Supp. 2015); *Applewhite*, 2014 WL 787828, at *3. Lisa, as the party complaining of the property division, has the burden of demonstrating from the evidence in the record that the division of the community property is so unjust and unfair that it amounts to an abuse of the trial court's discretion. *K.R.C.*, 2015 WL 7731784, at *4 (citing *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

Admittedly, Rick had two extramarital affairs and initially lied to Lisa about them. On the other hand, Lisa had an extramarital affair that she hid from Rick for up to two years. Under this evidence, we cannot say the trial court abused its discretion in not considering the fault of either party in dividing the community estate or in its decision regarding spousal maintenance.

In addition, although there were over 120 exhibits admitted into evidence, only five exhibits are contained in the reporter's record. Among the missing exhibits are Rick's inventory and appraisement, expenses of Lisa and the children, charges to the family credit card, lists of property Lisa inherited from her grandmother, a tracing of Lisa's separate-property spending during the marriage, Lisa's financial information statement from an earlier hearing, excerpts from Lisa's deposition played at the hearing, and Rick's proposed property division. In addition, the record does not include a request for a reporter's record. Lisa did not cause a complete reporter's record to be filed or request a supplement to the record.

Lisa also did not include with her designation of the portions of the record to be provided a statement of the points or issues to be presented on appeal. Rule 34.6(c) requires a party requesting a partial reporter's record to include such a statement. TEX. R. APP. P. 34.6(c)(1). Without that statement, Lisa is not entitled to any presumption that the record is complete as designated. *See Tull v. Tull*, 159 S.W.3d 758, 761 (Tex. App.—Dallas 2005, no pet.) (citing *$4,310 in U.S. Currency & 1993 Pontiac Automobile Vin: 1GNW543PC723734 v. State*, 133 S.W.3d 828, 829 (Tex. App.—Dallas 2004, no pet.)); *see also* TEX. R. APP. P. 34.6(c)(4).

Since Lisa did not file a complete record and did not comply with the partial reporter's records provisions, we presume the omitted portions of the reporter's record support the trial

court's division of the community estate and its denial of spousal support. *See Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam); *Tull*, 159 S.W.3d at 761; *$4,310 in U.S. Currency and 1993 Pontiac Automobile Vin: 1GNW543PC723734*, 133 S.W.3d at 829–30.

For the foregoing reasons, we find that the trial court did not abuse its discretion in its division of the community estate and its denial of spousal support.

*(3)    The Trial Court's Response Times Were Not Unreasonable*

Lisa additionally complains that the trial court erred in not making its ruling[2] until two months after trial and in not entering a final judgment until four months after the trial. She argues that the delay affected the trial court's ability to remember the candor and demeanor of the witnesses, thereby causing the trial court to fail to grant the divorce on the grounds of Rick's adultery. Lisa does not cite any relevant cases in support of this part of her argument. She concedes that, after the trial court notified the parties of its ruling, both parties filed motions for clarification and reconsideration, Rick filed a motion for judgment, and the trial court held a hearing on the motions September 24, 2015.

A delay of six years between the trial and final judgment has been held unreasonable and a cause of embarrassment and undue hardship. *Lloyd's of London v. Walker*, 716 S.W.2d 99, 100 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). When an appellant complains of a delay in the entry of a judgment, it is the appellant's burden to show both the delay's unreasonableness and resulting harm. *Id.* at 101 (citing *Bryant v. Bruner*, 593 S.W.2d 358, 362 (Tex. Civ. App.—Texarkana 1979, no writ)). In this case, Lisa has not shown how a two-month delay between trial and notifying the

---

[2]On July 27, 2015, the trial court sent the parties its ruling.

parties of its judgment is unreasonable. Nor do we think this delay is unreasonable. The trial of this case took three full days and involved over 120 exhibits, some of which were voluminous, including the tracing report of Lisa's expert concerning property she claimed to be her separate property. In addition, Lisa has not produced any evidence of the number of other cases, motions, or other matters on the trial court's docket or any evidence of other judicial or administrative factors that may have influenced the time in which judgment could be rendered and entered. Without such evidence, we cannot say there has been an unreasonable delay by the trial court in notifying the parties of its ruling. *See In re Rey*, No. 07-02-0104-CV, 2002 WL 350473, \*1–2 (Tex. App.—Amarillo Mar. 2, 2006, orig. proceeding) (per curiam) (not designated for publication).

Further, the record shows that, after the trial court notified the parties of its judgment, Rick sent Lisa a proposed draft of a divorce decree on or about August 24, 2015. When Lisa did not agree to the draft, Rick filed a motion for entry of judgment on September 18, and Lisa filed a motion for clarification and reconsideration on September 21. The trial court held a hearing on these motions on September 24, and entered its judgment the same day. On this record, we find that any delay between the trial court's notifying the parties of its ruling and its entry of final judgment was caused by the parties. Lisa has not shown the unreasonableness of the trial court's timing.

We affirm the trial court's judgment.


Josh R. Morriss III
Chief Justice


Date Submitted:     August 3, 2016
Date Decided:       August 12, 2016